This was a suit in equity, instituted in September 1845 in the Circuit court of Louisa county, by the administratorde bonis non with the will annexed, and children, of Garland Thompson deceased, against the administrators debonis non with the will annexed, of Nathaniel A. Smith deceased, his widow and children, and others. The case stated in the original, amended and supplemental bills, was substantially as follows: That in the year 1815, William Mitchell, jr., and Charles Thompson, jr., borrowed of Francis Jerdone the sum of 10,000 dollars, for which they gave their joint obligation with Thomas Price, jr., of Hanover county, and several other persons as their sureties. That in 1821 William Mitchell, jr., paid to Jerdone his moiety of the debt, and then took from Charles Thompson, jr., a bond, with Nathaniel Thompson and *Page 113 
Nathaniel A. Smith, as his sureties, to secure Mitchell and his heirs against the payment of Charles Thompson's half of the bond. That this bond, though it had v been sought for in every place where it might be expected to be, had not been found, and they charged, therefore, that it was lost. That William Mitchell, jr., died in 1822; and by his will he gave one half of his estate to his mother Isabella Mitchell, and the other half to his sister Mrs. Garland Thompson; and that Garland Thompson qualified as his executor, with Charles Goodall and others as his sureties. That Isabella Mitchell afterwards died, and left her estate to Mrs. Garland Thompson. That thus a large part of the estate of William Mitchell, jr., had become the property of Garland Thompson; and that the complainants had inherited from him a considerable property. That Garland Thompson died in 1835; and Charles Thompson, jr., qualified as his executor, and also as administrator debonis non with the will annexed of William Mitchell, jr. That he had been lately removed, and the plaintiff Philip M. Thompson had qualified on the estate of Garland Thompson, and that of William Mitchell had been committed to the sergeant of the City of Richmond. That until recently before the institution of the suit, Charles and Nathaniel Thompson were in prosperous circumstances, and fully able to pay the balance due upon the bond to Jerdone; but that they had then become irretrievably insolvent. That the administrators of Jerdone had recovered a judgment upon the bond against Thomas Price's representative, who had paid the amount, and had sued the sureties of Garland Thompson as executor of William Mitchell, jr., for the devastavit of the executor, and had recovered a judgment against them; and they, having discharged the judgment, had filed their bill against the complainants as the administrators de bonis non with the will annexed of Garland *Page 114 
Thompson and Isabella Mitchell, and the heirs at law and devisees of Garland Thompson and Isabella Mitchell, who were the residuary legatees of William Mitchell, to have satisfaction of the amount so paid by them, with interest and costs.
The parties defendants to the bill were the personal representative, widow and children of Smith, Charles Thompson, jr., and Nathaniel Thompson, the sureties of Garland Thompson as executor of Mitchell, and others; and the prayer of the bill was, that the representative, devisees and legatees of Smith might be compelled to indemnify and save the complainants harmless against all loss or injury on account of the debt of Jerdone, and particularly against the demand of the sureties of Garland Thompson as executor of Mitchell, and for general relief.
The complainants filed with their hill, the will of William Mitchell, in which he stated that he and Charles Thompson, jr., had borrowed of Jerdone 10,000 dollars; of which he had paid his moiety, and had taken of Charles Thompson, jr., his bond for 5000 dollars, with Nathaniel Thompson and Nathaniel Smith. Bat this will was specially excepted to by the Smiths as incompetent evidence against them.
The personal representative, heirs and legatees of Smith, demurred to the original and amended bills, and also answered them. It is unnecessary to state the grounds of demurrer. In their answer, they denied all knowledge of the bond to Jerdone; and alleged that they had never heard until 1843, of the bond which the complainants sought to set up against their testator. And they required the fullest proof that the bond ever existed; or if it once existed, that it had not been intentionally destroyed by Garland Thompson.
The only question of fact really in dispute in the cause, was as to the existence of the bond of indemnity to Mitchell. As to that, Charles Thompson, jr., *Page 115 
was examined, and stated, that some time in the year 1814 or 1815, William Mitchell and himself borrowed of Francis Jerdone 10.000 dollars, and executed a bond for the same, with some three or more sureties. That about the year 1820 or 1821, Mitchell paid one half of this bond, 5000 dollars, to Jerdone, and required of Thompson to execute a bond to him as an indemnity for the other half, which he did, with Nathaniel Thompson and Nathaniel A. Smith as his sureties; the condition of which last mentioned bond was to indemnify and save harmless the said William Mitchell from all liability as co-obligor in the said bond of 10,000 dollars to Jerdone. That William Mitchell was living in Richmond at the time the bond was executed: that he wrote to Thompson on the subject, who, in his answer, mentioned Nathaniel Thompson and Nathaniel A. Smith as his sureties; to which Mitchell assented. He says further, "I think I drew the bond, and when it was executed. I expect William Mitchell was in Richmond. I procured the signatures of the sureties, and sent the bond, when executed, to William Mitchell." He had no recollection of ever seeing the bond afterwards.
The defendants, the Smiths, introduced evidence to impeach the accuracy of the statements of this witness, and one of the Judges of this Court was disposed to question whether the bond had ever been delivered to Mitchell; but the Court did not deem it necessary to decide that question. The other facts stated in the bill were made out by the proofs.
In the progress of the cause, a tract of land belonging to the heirs of Nathaniel A. Smith was sold by the consent of the parties, and the proceeds were held subject to the future order of the Court.
The cause came on to be finally heard in September 1849, when the Court was of opinion that the execution of the bond by Nathaniel A. Smith deceased, and others, was fully established by the testimony; and it *Page 116 
appearing that the other parties to the said bond were insolvent, and that the parties had agreed that the proceeds of the land sold as aforesaid, should he devoted to the satisfaction of the liability created by said bond, if the Court should sustain the plaintiff's claim; and the Court being farther of opinion, that Goodall and others, the sureties of Garland Thompson, as executor of William Mitchell deceased, upon the recovery of the judgment against them by Price's executors, became entitled to the benefit of said indemnifying bond, and to all the rights and remedies to which Garland Thompson, as the executor of William Mitchell, would have been entitled; and the Court being further of opinion, that all the parties being before the Court, the parties ultimately liable should be decreed at once to satisfy the claims of the sureties of Garland Thompson as executor of William Mitchell deceased, to the relief of the complainants who were the legatees of Garland Thompson: It was therefore decreed, that out of the proceeds of the land aforesaid, the costs of all the parties in the cause, except the representatives and distributees of Nathaniel A. Smith, and Charles Thompson, jr., and Nathaniel Thompson, should first be paid; and then, that there should be paid to the said Goodall and others, the sum of 6922 dollars 64 cents; that being the amount paid by them as the sureties of Garland Thompson as executor of William Mitchell, in satisfaction of the judgment of Price's executors against them; and also the sum of 109 dollars 29 cents; and to the plaintiffs the sum of 27 dollars 36 cents, that being the amount of the costs of the parties, plaintiffs and defendants, in the suit of Goodall and others against the devisees and legatees of Garland Thompson deceased. From this decree, the devisees and legatees of Smith applied to this Court for an appeal, which was allowed.
The plaintiffs in this case have shewn no original equity to set up and enforce the bond of indemnity in the proceedings mentioned, against the representatives of Nathaniel Smith, one of the sureties therein. According to their own pretensions, the plaintiffs are the representatives of Garland Thompson, and not of William Mitchell, to whom that bond is alleged to have been executed; and the condition thereof was not for the indemnity of the representatives of Thompson, but of Mitchell. Nor have the plaintiffs acquired any equity from the circumstance that the estate of Garland Thompson was derived in part from William Mitchell; the bond of indemnity not being a covenant running with the estate of Mitchell, whether real or personal, against others acquiring the same as purchasers, or as volunteers.
If the plaintiffs can derive any equity against the sureties in the bond of indemnity, it must be from a subrogation by anticipation to the successive remedies of others. These remedies are, the judgment of the administrators of Jerdone, upon the original bond which was the subject of the indemnity, against the executors of Price who was one of the sureties therein — the judgment on the relation of Price's executors against the sureties in the official bond of Garland Thompson, who had been executor of William Mitchell — the claim of those sureties to reimbursement against the representatives of Garland Thompson — the claim of those representatives to be reimbursed by Mitchell's representatives — and a consequent claim of the latter to the protection afforded by the bond of indemnity.
It is therefore only by treating their suit as a billquia timet, and for subrogation against those who ought ultimately to be subjected to a burthen with which they are threatened, that the plaintiffs can be entitled, if at all, to the relief which they seek. In that aspect of *Page 118 
their case, their claim is to a mere equity, which, like other equities, is open to the defence of laches and lapse of time.
The presumption of payment arising from lapse of time, when applicable to a legal demand, as in the case of a debt secured by bond, may be repelled by satisfactory evidence that the debt in point of fact has not been paid. That presumption arose in regard to the original bond executed by Mitchell and Charles Thompson and their sureties to Jerdone, which was payable in January 1815, and upon which the action of Jerdone's administrators was not brought until after the expiration of about 30 years. The judgment recovered by the plaintiffs in that action, is conclusive, as between the parties thereto, against the presumption of payment: but it does not conclude the representatives of Nathaniel A. Smith, who were neither parties nor privies, and the judgment was recovered by default, and without notice to them pending the action. The question therefore arising upon the legal presumption of payment, and the evidence relied upon to repel it, is still open in the present suit: but upon that question, the Court deems it unnecessary to express an opinion. Nor is it necessary to decide another question presented by the pleadings and evidence, to wit, whether the alleged bond of indemnity was ever executed by Nathaniel Smith.
The plaintiffs in the present suit are not seeking the aid of a Court of equity to enforce a legal demand on their part against the representatives of Nathaniel Smith. They never had any cause of action upon the bond of indemnity alleged to have been executed by Charles Thompson and his sureties to Mitchell. They have at most, as above indicated, a mere equity to be subrogated to the place of Mitchell's representative, upon the supposition that the latter may be coerced to pay the balance asserted to have been in arrear upon the original *Page 119 
bond, and the fear that the plaintiffs may consequently be subjected to the loss. Without deciding upon the original merits of the case in that aspect, the Court is of opinion that the plaintiffs are debarred in a Court of equity, under the circumstances of laches and lapse of time disclosed by the record, from the relief which they seek.
This suit was not brought until August 1845, more than 34 years after the original bond to Jerdone was payable, and more than 23 years after the date of the bond of indemnity. In the mean time, Garland Thompson was the executor of Mitchell, from December 1822 until he died in May 1835, a period of nearly 13 years; and it was his duty to make payment of the debt to Jerdone, or require it to be paid by Charles Thompson; and Charles Thompson himself was administrator de bonis non with the will annexed of Mitchell, from May 1836, and also the executor of Garland Thompson, from June 1835, until the revocation of his powers as such in April 1844; and was bound to see to the discharge of the debt, in his representative, as well as his individual character. And yet, the debt to Jerdone, and the claim of Mitchell's estate to indemnity were suffered to sleep until after Charles Thompson, the original debtor, became, within a few years before the institution of this suit, utterly insolvent. And now after such great lapse of time, and laches on the part of the plaintiffs, and those through whom they derive their supposed equity, they seek by a bill quia timet to set up the bond of indemnity against the representatives of a deceased surety, upon the supposition of its accidental loss, because it cannot be found, and does not appear ever to have been seen by any one since the time of its alleged execution and delivery to Mitchell.
The pretensions of the plaintiffs against the representatives of Smith, are at war with the sound and well settled doctrine of equity, derived not merely from the *Page 120 
presumptions and bars which prevail at law, but still more comprehensive, and founded upon considerations of policy and justice that require those who invoke its jurisdiction, to do so within a reasonable time, instead of lying by until by their supineness and negligence, there can no longer be a safe determination of the controversy, and their adversaries are exposed to the danger of injustice from loss of information and evidence and means of recourse against others, occasioned by deaths, insolvencies and other untoward circumstances. The application of this equitable doctrine is for the sound discretion of the equitable forum, and does not require the conviction of the Court against the original justice of the claim, or of any other specific ground of defence, but its belief that under the circumstances of the case, it is too late to ascertain the merits of the controversy.
The Court is therefore of opinion, that the plaintiffs are not entitled to the relief which they seek, and that the defendants, whose property has been sequestrated and sold in the progress of the cause, must be restored to the proceeds thereof.
Decree reversed with costs, and bill dismissed with costs.