Joynes, J.
The first point insisted on for the appellants is, that the appellees succeeded in defeating the ejectment of Mitchell & al. v. Barrata & al., to recover the land now in controversy, upon the title and possession of their ancestor, Henry Clarke, as trustee under the deed of trust executed by Caleb Lowndes to-secure the payment of certain debts, and dated June 10th, 1819; and that the appellees are thereby estopped to maintain, in this action, that the title and possession were those of Henry Clarke individually, and not as trustee. To establish the fact that the ejectment was. defended on the title and possession of Henry Clarke as trustee, reference is made to certain expressions in the opinion of the president of this court when that case was before it. 17 Gratt. 445. But the judgment in that case was not admissible in this, as evidence of facts established in that case, because the parties in that *549 ■case were not tlie same as the parties in this. So, the opinion of the court in that case could not he referred to in this to establish any fact adjudged or alleged in it. Besides, it ivas not a question, in that case, whether the Clarkes relied upon the possession of Henry Clarke, individually, or upon his possession as trustee. It ivas ■enough, for the purpose of defeating that action, to show that Clarke held adversary possession for a sufficient length of time to defeat the action; and it was immaterial whether it was his individual possession or his possession as trustee.
The appellants further rely upon the evidence filed in the case of Mitchell v. Baratta, to show that the Clarke’s defended that action upon the title and possession of Henry Clarke as trustee. This evidence was .admissible against the Clarkes, in this case, because they were parties to the ejectment. 1 Greenleaf Evidence, § 553.
The appellees, in their answer, deny that the}' defended the ejectment upon the title and possession of Henry Clarke, as trustee. There is no proof that Henry Clarke ever declared, within the period of limitation or at any other time, that he held as trustee, and not in his own right. His heirs deraigned their title in the ejectment suit, by proving the title of Caleb Lowndes; the deed of Caleb Lowndes, in 1819, to Henry Clarke and Beuben Burton as trustees, of whom Clarke was the survivor; and they proved the possession of Clarke by the erection of a fence around the land in July, 1839, and his exclusive and notorious possession from that time. It did not appear that Clarke ever had actual possession until he erected this fence. That was more than twenty years after the date of the deed of trust. It does not appear whether the debts had ever been paid; but after the lapse of twenty years •the law will presume that they had been paid. [CoAvan & Hill notes to Phil. Ev. 678-’9, 5th ed.] Besides, the *550 greater part of the debts provided for by tbe deed of trust were due upon executions against Lowndes, then in tbe bands of tbe sheriff of Henrico. Ve must presume that these debt§ were collected, and promptly collected. It was tbe interest and tbe duty of tbe sheriff to collect them. Tbe only other debt provided for was due to John Clarke, who, as has been stated in tbe argument, was the father of Henry Clarke. John Clarke died early in 1829, as appears ii’om bis will and tbe probate of it; and made Henry Clarke one of bis residuary legatees and devisees, and also one of bis. executors. If this debt was not paid to John Clarke, in bis lifetime, there is a strong presumption that it was paid to bis executors after bis death. It was tbe duty, as well as the interest of tbe executors, both of' whom were residuary legatees, to collect it.
Tbe presumption that these debts were all paid is so strong that we may assume tbe fact to be so. They were probably paid, too, within a reasonable time—in a few years, at least, after tbe date of tbe deed of' trust.
There is no direct evidence to show who paid these debts. They do not appear to have been paid by any public sale of tbe land under tbe deed of trust. CalebLowndes did not pay them; because be was insolvent.. If they were paid by any other person than Henry Clarke, we should have beard something of bis claim to reimbursement out of tbe land. Tbe most probable supposition is, that they were paid by Henry Clarke, upon an agreement that tbe land should be bis. I do not say that tbe evidence proves this; but I. will say that this supposition will account for tbe subsequent conduct of Clarke and of Lowndes’ heirs, and is not inconsistent with any part of tbe evidence.
It seems to be clear from tbe evidence, that the-equity of redemption was extinguished long ago, and doubtless before July, 1839. It may be inferred, from. *551 the lapse of time, and the acquiescence of Lowndes’ heirs. Prevost v. Gratz, 6 Wheat. R. 481. If the equity of redemption had not heen extinguished, why did not the appellants, the heirs of Lowndes, set up their claim until the institution of this suit, in 1867 ? They must have known that the debts had heen paid. They must have known, from July, 1839, that Clarke had taken possession by enclosure. This was enough to excite enquiry. If Clarke told them that he had taken possession as trustee, did they not ask him what was the necessity for doing so, and why the sale could not he made without further delay ? Was not their surprise increased when they found Clarke making a lease of the land, in his own name, for so long a term as eight years ? There could not he a stronger indication that he did not hold the land for the benefit of the trust, than the fact that he leased it for so long a term, and appropriated all the rent to himself. When they found Mitchell and Williams suing to recover the land upon a title adverse to that of their ancestor, Caleb Lowndes, why did they not assert their claim ?
The presumption, therefore, seems to he irresistible, that the debts, provided for in Lowndes’ deed of trust, were satisfied, and the equity of redemption extinguished long ago, and probably before Henry Clarke made his enclosure in July, 1839. The probability is, that Henry Clarke had satisfied the debts and extinguished the equity of redemption, many years before, and that he foreboré to take possession until a claim to it was asserted by Macmurdo’s sale, in July, ,1839. Having no deed from Lowndes, Clarke found it necessary to take actual possession, which he did by his enclosure.
It must he borne in mind, in dealing with the evidence in this case, that if Henry Clarke had heen alive when the ejectment was tried, he might have heen able to produce evidence of which Ms heirs had no *552 knowledge, and that, after so great a lapse of time, evideiice known to have existed may have been lost by the death of witnesses and the loss or destruction of papers. It seems to me, therefore, to be a hard inference to say that the heirs of Clarke defended the ejectment upon his title and possession as trustee.
But, if these conclusions are not so well sustained as they seem to me to be, it must be conceded that they are not destitute of force. At any rate, it cannot be said to be certain that the appellees defended the ejectment upon the title and possession of Henry Clarke, as trustee. How, the principle of estoppel invoked by the appellants to preclude the appellees from setting up, in this case, a title in themselves, as heirs of Henry Clarke, discharged of the trust, rests upon the ground of fraud. Philadelphia, Wilmington & Balt. R. R. v. Howard, 13 How. U. S. R. 308. It would seem to be very clear, upon principle, that this rule cannot be applied in any case, in the absence of clear proof, that the party had, in the previous case, made use of a defence inconsistent with that which he proposes to use in the subsequent case. In a case in which the fact distinctly appears, the rule is eminently wise and just, because it prevents a fraud upon the administration of justice. But, when the fact is to be made out by inference and conjecture only, as to the character of the first defence, .and it cannot be said to be established with certainty, it would be a violation of the plainest justice to apply the rule. And, I apprehend, that the doctrine of estoppel is never applied, in any of its branches, upon an uncertain and speculative state of facts.
The appellees were, therefore, at liberty to set up, in this case, a title in Henry Clarke individually, and in themselves as his heirs, to the land in controversy. And, as we have seen, the facts and circumstances afford the strongest presumption that the debts provided *553 for in tlie deed of trust were all satisfied, and tlie equity of redemption extinguished long ago, and probably long before Clarke’s enclosure of the land, in 1839. That being so, the possession of Clarke must have been adverse, and there was no necessity for ' ^ Clarke to disclaim the trust, inasmuch as it no longer existed. Twenty-eight years elapsed from the date of Clarke’s enclosure before the beginning of this suit; ■and the lapse of time barred the claim of the appellants.
But, even where there is no absolute bar from lapse of time, it is a principle of courts of equity not to'take cognizance of an equitable claim after a great lapse of time, and when, from the death of witnesses and the loss of papers, there is danger of doing injustice, and 'there can no longer be a safe determination of the controversy. In this case, the appellants have been guilty of great laches in the assertion of their claim: all the original parties to the transactions have long been dead, and the means of explaining those transactions have been lost. On this ground, the bill of the appellants ought to have been dismissed. Caruthers’ Adm’rs v. Trustees of Lexington, 12 Leigh 610; Smith & als. v. Thompson’s Adm’rs & als., 7 Gratt. 112; West’s Adm’rs & als. v. Thornton & als., 7 Gratt. 177; Doggett v. Helm, 17 Gratt. 96; Robertson & als. v. Read’s Adm’r als., 17 Gratt. 544; Wagner v. Baird, 7 How. U. S. R. 234; Badger v. Badger, 2 Wall. U. S. R. 87.
It was insisted by the counsel for the appellants, that this being the case of an express trust, the appellees could not take advantage, in any form, of the lapse of time to protect themselves against the claim of the appellants. But in 2 Story’s Equity, § 1520 a. is the following: “It is often suggested that the lapse of time constitutes no bar in eases of trust. But this 'proposition must be received with its appropriate qualifications. As long as the relation of trustee and *554 cesiuis que trust is acknowledged to exist between the-J ° parties, and the trust is continued, lapse of time can constitute no bar to an account or other proper relief' for the cesiuis que trust. But, when this relation is no ^on£er Emitted to exist, or time and long acquiescence have obscured the nature and character of the trust, or the acts of the parties, or other circumstances give rise to presumptions unfavorable to its continuance, in all such cases a court of equity will refuse relief, upon the ground of lapse of time, and its inability to do complete justice. This doctrine will apply even to cases of express trust, and, a fortiori, it will apply with increased strength to cases of implied or constructive trusts.” The cases there cited fully sustain the text.
Upon the whole, I am of opinion that there is no error in the decree, and that it should be affirmed.
The other judges concurred in the opinion of Joynes, J.
Decree affirmed.