## WHEELING.

PUSEY *et ux.* v. GARDNER *et al.*

Submitted July 8, 1882—Decided April 14, 1883.

(*WOODS, JUDGE, Absent.)

1. If a party obtains a deed for land without consideration upon a parol agreement, that he will hold the land in trust for the grantor, such trust will not be enforced, as it would violate the statute of frauds and the general rule of law, that parol evidence cannot be admitted to vary, add to or contradict a written contract. (p. 474.)

2. The burden of charging as well as proving fraud, mistake or misrepresentation is on the party alleging it; and a plaintiff is no more entitled to recover without sufficient averments in his bill,

*Case submitted before Judge W. took his seat on the bench.

| | |
|---|---|
| 21 | 469 |
| 34 | 230 |
| 34 | 630 |
| 21 | 469 |
| 35 | 523 |
| 36 | 55 |
| 21 | 469 |
| 37 | 501 |
| 37 | 577 |
| 21 | 469 |
| 39 | 122 |
| 39 | 506 |
| 21 | 469 |
| 40 | 41 |
| 21 | 469 |
| 41 | 274 |
| 41 | 335 |
| 21 | 469 |
| 42 | 13 |
| 42 | 311 |
| 42 | 781 |
| 21 | 469 |
| 43 | 153 |
| 21 | 469 |
| 47 | 222 |
| 47 | 225 |
| 47 | 765 |
| 21 | 469 |
| 48 | 348 |
| 21 | 469 |
| 50 | 358 |
| 21 | 469 |
| 54 | 617 |
| 21 | 469 |
| 56 | 332 |
| 56 | 487 |
| 21 | 469 |
| 60 | 378 |

than he is without proof of his averments when properly made. The one is as essential as the other, and both must concur or relief can not be granted. (p. 476.)

3. It is a settled principle of law and sound policy, that a party can not be permitted to disavow or avoid the operation of an agreement entered into with a full knowledge of the facts, on the ground of ignorance of the legal consequences which flow from these facts. (p. 476.)

4. A conveyance from a child to its parent, whether with or without a valuable consideration, is presumed to be valid in the absence of any circumstances or proof tending to show fraud, misrepresentation or undue influence or reasonable grounds, from which the court may presume that the act was not entirely free and voluntary on the part of the child. (p. 477.)

5. A conveyance made by a woman immediately before her marriage is *prima facie* good, and can be impeached only by proof of fraud. (p. 485.)

6. Even where there is no absolute bar from the lapse of time or by the statute of limitations, it is a principle of courts of equity not to take cognizance of an equitable claim after a great lapse of time, and where from the death of parties and witnesses, there is danger of doing injustice, and there can no longer be a safe determination of the controversy. A court of equity therefore will not set aside a deed made by a daughter to her father immediately before her marriage conveying her remainder in land, in which the father had a life estate, upon the ground of undue influence after an interval of thirty-five years and after the death of the father, though the claim of the daughter is not barred by the statute of limitations, where the case is not a clear one, and there are no circumstances which sufficiently account for the delay. (p. 484 )

7. Lapse of time, when it does not operate as a positive statutory bar, operates in equity as an evidence of assent, acquiescence or waiver. (p. 481.)

Appeal from and *supersedeas* to a decree of the circuit court of the county of Hancock, rendered on the 27th day of July, 1881, in a cause in said court then pending, wherein William C. Pusey and wife were plaintiffs, and John H. Gardner and others were defendants, allowed upon the petition of said defendants.

Hon. George E. Boyd, judge of the first judicial circuit, rendered the decree appealed from.

The facts of the case are stated in the opinion of the Court.

*Ewing, Melvin & Riley* for the appellants cited the following authorities : 15 W. Va. 567; 57 Mo. 73; 10 W. Va. 718; 11 W. Va. 229; 12 Pet. 253; 8 How. 183; 11 Law Rep. N. S. 531 (3 Abb. Nat. Dig. 372); 3 B. Mon. 76; 17 Ohio St. 485; Hill Trust. 157; Perry Trusts § 201; 1 Sto. Eq. § 309; 2 Lom. Dig. 301, 302; 2 Min. Inst. 597; 31 Barb. 9; 2 Leigh 11; 22 Ohio St. 329; 6 N. Y. 268; 73 N. Y. 499; 11 W. Va. 455; 1 Sto. Eq. § 84 a; 30 Gratt. 576; 32 Gratt. 411.

*John A. Campbell* for appellant cited the following authorities : 9 W. Va. 636; 7 W. Va. 289; 18 Gratt. 705; *Id.* 106; 1 Johns. Chy. 425; 13 Mass. 443; 23 Gratt. 589; 2 Sto. Eq. Juris. § 961; 26 Gratt. 392; 1 W. & T. Lead. Cas., Part I., p. 354; 1 Greenl. Ev. § 200; 15 W. Va. 582; 22 Gratt. 589; 26 Gratt, 392; 25 Gratt. 373; 23 Gratt. 585; 4 Otto 811; 18 Wall. 509; 1 Sto. Eq. Juris. § 64 a; 9 Pet. 404; 8 W. Va. 442; 1 Rob. 161; 6 Gratt. 405; 20 Gratt. 553; 29 Gratt. 762; 18 Wall. 78; Law Rep. 7 Chy. App. 329; 12 Pet. 224; *Brown* v. *Carter*, 5 Ves.; 12 Ves. 376; 1 J. & W. 58; *Richards* v. *Williams*, 7 Wheat.; *Hughes* v. *Edwards*, 9 Wheat.; 7 Gratt. 112; 19 Gratt. 300; 23 Gratt. 223; 2 Lom. Exrs. 488; 2 Perry Trusts, 860, 869; 30 Gratt. 577; 17 Ves. 289; 10 Gratt. 304; 1 Leigh 457; 23 Gratt. 223; 11 Gratt. 505; 4 Rand. 397; 1 Bishop Married Women § 706; *Id.* § 697.

*Daniel Lamb* for appellees cited the following authorities : Kerr Fraud and Mistake 192; Dowry 310 (21 E. Chy. R. 121 note); 2 Atk. 254; 32 Gratt. 608, 609; Kerr Fraud and Mistake 150–153; *Id.* 179; 2 Lead. Cas. Eq. (4th Am. Ed.) Part II, pp. 1176, 1177; 7 Beav. (29 E. Chy. R.) 551, 560; 15 Beav. 278 (11 E. L. & Eq. 134, 138, 139); Law Rep. 7 Chy. App. 329, 338, 339; 8 How. 183; 31 Barb. 9; 2 Leigh 11; 6 N. Y. 268, 272 *et seq*; 73 N. Y. 498, 502, 503; 10 Hare 260, 262 (44 E. Chy. R.) 252, 254, 255; Law Rep. 1 Chy. App. 252; 32 Ohio St. 329; 15 Sim. 437 (38 E. Chy. R.); 66 N. Y. 37; 6 Cush. 472; 2 Ohio St. 209; 24 Conn. 230; 1 Wash. Real Prop. 583, 584; 30 Gratt. 578; 32 Gratt.

416; 2 Wash. C. C. 397; 2 Lead. Cas. Eq. (4th Ed.) Part II., p. 1205; 25 Gratt. 28, 40 *et seq*; 14 Rep. 220; 33 Gratt. 269; Perry Trusts § 860.

Snyder, Judge, announced the opinion of the Court:

Josias Reeves died intestate, in June, 1832, leaving his daughter, Eliza the wife of John Gardner, and three other children to whom his real estate descended. In September, 1832, the said daughter, Eliza, died leaving, as her heirs at law, five children to whom her share of the real estate derived from her father descended subject to the life estate of her husband, John Gardner, as tenant by the courtesy. By a decree, entered on the 10th day of October, 1833, in a suit brought to partition the real estate of said Josias Reeves among his heirs, a tract of four hundred acres called the "Up the County Farm," in what is now Hancock county, with some houses and lots in the town of Wellsburg, was allotted to the five children of said Eliza, subject to the just claims of said John Gardner therein. The said farm was valued in said partition at four thousand eight hundred dollars, and the said houses and lots in Wellsburg at one thousand eight hundred and thirty-eight dollars and twenty-five cents. Two of the said children of Eliza Gardner died soon after the partition at the ages of seven and five years respectively, leaving but three as the joint owners of the said farm and houses and lots, viz: Rachel Ann Gardner, Reason R. Gardner and Josias R. Gardner. The said Josias R. died intestate, in 1869, leaving as his heirs nine children, five of whom are infants, and a widow—all of said children are still living except one of the adults. The said Reason R. died testate, in August, 1877. By his will he devised his one-third of said farm to his widow and only infant son.

The said Rachel Ann by deed, dated May 17, 1844, which was acknowledged on the 22d and duly recorded on the 29th day of May, 1844, conveyed to her father, John Gardner, with covenant of general warranty, all her share, right, title and interest in and to said "Up the County Farm" of four hundred acres of land on the Ohio river. The deed, by its terms, conveys an absolute fee in the undivided one third of said farm "for and in consideration of the sum of one thou-

sand six hundred dollars by the said John Gardner to the said Rachel Ann Gardner in hand paid, the receipt of which is hereby acknowledged," &c.  The said Rachel Ann was twenty-three years of age at the time said deed was made and was then living with her father and had been from her birth.  On the 29th day of May, 1844, she was married to W. C. Pusey and lived with her father thereafter until, perhaps, 1846 when she and her husband moved to Wellsville and resided there about six years; they then moved back into a house built for them by her father on the said "Up the County Farm" and have continued to reside there ever since. The said John Gardner took possession of said farm in 1833, moved upon it about 1841, and resided on it from that time, using and taking the rents, issues and profits thereof, until his death which occurred May 23, 1878.

W. C. Pusey and the said Rachel Ann his wife, instituted this suit, in January, 1879, in the circuit court of Hancock county against the widow and children of said Josias R. Gardner, deceased, and the devisees of said Reason R. Gardner, deceased, for the purpose of setting aside and declaring void the said deed, dated May 17, 1844, from the plaintiff Rachel Ann to her father, John Gardner, on the ground that it had been obtained by mistake, fraud and misrepresentation and without consideration, and also to have the said "Up the County Farm" patitioned among the parties entitled thereto according to their respective rights.  The infant defendants by their guardian *ad litem* and the adult heirs and widow of Josias R. Gardner, deceased, filed their respective answers to the plaintiffs' bill, depositions were taken by the plaintiffs, and the cause, having been regularly set for hearing, came on to be heard, and on July 27, 1881, a decree was entered therein setting aside, canceling, and annulling the said deed of May 17, 1844, from the plaintiff Rachel Ann to her father, for the one third of said farm, described in said deed, and declaring, that she was also entitled to the one third of the rents, issues and profits of said farm since the death of her father on May 23, 1878, and referring the cause to a commissioner to ascertain and report said rents, issues and profits, &c.  From this decree the adult defendants have appealed to this Court.

The said decree is silent as to the grounds upon which said deed of May 17, 1844, was set aside and annulled; but it sufficiently appears from the briefs of counsel filed in this Court that the grounds relied on by the appellees to sustain the said decree are:

*First*—That the said deed was executed without consideration and upon an express parol agreement that the property should be held by the grantee, John Gardner, "in trust for the use and benefit" of the grantor, the said Rachel Ann;

*Second*—That it was obtained by mistake, misrepresentation and fraud, and by the undue influence of the grantee therein; and

*Third*—That it was executed with the intent on the part of the grantor and grantee to defraud the plaintiff, W. C. Pusey, the intended husband of the grantor and is, therefore, void as to him.

1. As to the facts upon which the first ground is based, the plaintiffs' bill, after stating the title of the plaintiff, Rachel Ann, to the fee in one third of said farm, avers: "That when your oratrix was in the twenty-third year of her age, she was engaged to be married to your orator, who was almost a stranger to her said father, and was married to him on the 29th day of May, 1844; that a few days before the said marriage her father, who knew she was about to be married to said W. C. Pusey, came to your oratrix with a paper writing or deed which he requested her to sign and acknowledge, as he alleged, for her own safety and benefit, her said father telling her that it was a conveyance to him of her interest in the said "Up the County Farm" in trust for her use and benefit, he alleging he would take care of it and keep her and her said intended husband from wasting and spending it, as they were young and inexperienced, and that this was his sole purpose for asking her to make said conveyance; she, relying on the father's said statements, accordingly consented to and did sign and acknowledge the said deed on the 17th day of May, 1844, conveying, as she supposed, her one third interest in said farm to her father in trust for her own use and benefit."

In *Troll* v. *Carter*, 15 W. Va. 567, this Court, after stating the general rule that parol evidence cannot be admitted to

vary, add to or contradict a written contract, and especially a contract or deed conveying land, held: "If a party obtains a deed without any consideration upon a parol agreement that he will hold the land in trust for the grantor, such trust will not be enforced, as it would violate the statute of frauds and this general rule, to permit parol evidence to establish such a trust." This decision was affirmed in *Zane v. Fink*, 18 W. Va. 755.

A deed to have any effect must of necessity divest the title of the grantor in the thing conveyed and vest it in the grantee. But if parol evidence can be received to prove that the grantee agreed to hold the property for the grantor's use, such evidence will in effect be received to prove that it was not intended to operate as a grant, but as a merely nominal transfer of the legal title which the grantor may recall at the very next instant. To permit such evidence in such case would be clearly to allow the contradiction of a solemn deed by parol evidence. In a court of equity the usee is regarded as the real owner, and unless restrained by the terms of the deed, he may at any time compel the conveyance of the legal title to him. I am, therefore, of opinion that the plaintiffs could not prove an express trust in favor of the female plaintiff by parol testimony and, as none other was offered, the said deed of May 17, 1844, could not be set aside on that ground.

2. In support of said second ground the plaintiffs alleged in their bill that the female plaintiff did not read said deed or hear it read, at the time she executed it, " nor did she know its contents until after her father's death and this because of her unlimited confidence in the good faith and honesty of her father, but on examination of said deed she is supprised to find that the same on its face is a grant of her entire interest in said farm to her father and the consideration of said grant as appears from said deed is one thousand six hundred dollars; and she alleges that she did not at any time, before or after the execution of said deed ever receive the said sum of one thousand six hundred dollars, or any part thereof; that at the date of said deed she had just attained her majority and did not know the difference between an absolute grant in fee and a grant in trust, and was wholly without business

experience or knowledge;" that her father always admitted
that she had never received any consideration for said convey-
ance to him; and she also says, "that said deed was obtained
from your oratrix by her father by mistake, misrepresenta-
tion, fraud and without consideration, and is null and void,
and that in executing the same she was entirely under the
influence and dominion of her father, and as her mother died
while your oratrix was an infant of tender years, she had no
one to counsel, advise or direct her but her said father by
whom she was raised."

"The burden of *charging*, as well as proving fraud is on
the party.alleging it; and while it is not necessary or proper
that he should spread out in his pleading the evidence on
which he relies, he must aver fully and explicitly *the facts*
constituting the alleged fraud; mere conclusions will not
avail." *Hale* v. *The West Va. Oil & Oil Land Co.* 11 W. Va.
229; *Davis* v. *Landcraft*, 10 *Id.* 718.

In this case the bill fails to aver *any facts* from which either
fraud or misrepresentation can be inferred. And it is
equally defective in its averments in regard to any mistake.
The object of pleading is to give notice to the opposite party
of the character of the claim or charges against him. A
mere legal conclusion is not a fact which can be met by
proof. If the facts are stated the law determines the conclu-
sion, but the law will not infer the facts when the conclusion
merely is stated. A plaintiff can no more recover without a
sufficient averment in his bill than he can without proof of
his averments if properly made. The one is as essential as
the other and both must concur or relief will not be granted.
A mistake for which a court of equity can grant relief must
generally be mutual with the parties. It is not enough to
show the sense and intention of one of the parties to the con-
tract. Though it be clearly established that the intention of
one of the parties is mistaken and misrepresented by the
written contract, that cannot avail unless it be further shown
that the other party agreed to it in the same way, and that
the intention of both of them was by mistake misrepre-
sented by the written contract. *Lyman* v. *United Ins. Co.*,
17 Johns. R. 377; *Alexander* v. *Newton*, 2 Gratt. 266.

The averments must distinctly show in what the mistake

consists, so that the court may not only discover whether it is such a mistake of fact as can be corrected, but also that it is not a mistake of law. For it is a settled principle of law and sound policy, that a party cannot be permitted to disavow or avoid the operation of an agreement, entered into with a full knowledge of the facts, on the ground of ignorance of the legal consequences which flow from those facts. *Shotwell* v. *Murray*, 1 Johns. Ch. R. 512; *Lyon* v. *Richmond*, 2 *Id.* 60. In such cases the bill must state the facts which occasioned the mistake as well as the mistake itself, and these facts must be clearly proven. *Rankin* v. *Atherton*, 3 Paige 143. The same rule, both in respect to pleading and proof applies with equal force to charges of fraud, misrepresentation and undue influence. The particular acts, words or conduct relied on to establish the fraud, misrepresentation or undue influence must be in effect averred and satisfactorily proven. In these essentials, it seems to me, the plaintiffs in this cause have wholly failed both in their pleadings and their proofs, unless the fact that the conveyance was from a child to its parent is of itself sufficient to vacate the deed. Before proceeding to consider the proofs, it will be more convenient to ascertain the principles of law governing transactions between parent and child.

In some cases it has been held: that where a child makes a gift to its parent, the simple fact of the relationship between them, is sufficient evidence of undue influence to warrant a court of equity in setting it aside unless the circumstances and facts connected with the transaction are such as to repel the presumption that such influence was exerted; and that the burden of showing such circumstances and facts rests upon the parent receiving the gift. *Archer* v. *Hudson*, 7 Beav. 551; *Turner* v. *Collins*, 7 Ch. App. Cas. 329; Kerr on Fraud and Mistake 179; *Hoghton* v. *Hoghton*, 11 Eng. L. & Eq. R. 135.

This seems to be the general rule established by the English courts in *cases of donations* from a child to its parent. In a recent English case, it was, however, held that the relation of father and daughter did not of itself render the validity of an arrangement between them respecting a reversionary interest of the daughter so doubtful as to justify a trustee in

refusing to transfer a fund in pursuance of the arrangement without the indemnity of the court. *Farmin* v. *Pulham*, 2 DeG. & Sm. 99.

While contracts between parent and child are always watched with great jealousy, not only for the purpose of ascertaining that the one likely to be so influenced fully understood the act he was performing, but, also, for the purpose of ascertaining that his consent to perform the act was not obtained by reason of the influence possessed by the other; not that the influence itself flowing from such relation, is either blamed or discountenanced by the courts; on the contrary the due exercise of it is considered useful and advantageous to society; but the courts hold, as an inseparable condition, that this influence should be exerted for the benefit of the one subject to it, and not for the advantage of the one possessing it. And even the English courts hold that contracts or conveyances between parent and child, whereby benefits are secured to the parent, if perfectly fair and reasonable in all their terms and circumstances, will be sustained. And in order to set aside a conveyance from a child to its parent on account of their relation to each other, it will be necessary to prove the exercise of undue influence, or establish some other ground of actual or constructive fraud against the parent. Hill on Trustees 218, (side p. 157), and cases cited.

The American cases, with the exception of some cases in New York and perhaps some other States, fully sustain the doctrine laid down in 1 Perry on Trusts section 201, which is as follows:

"The position and influence of a parent over a child are so controlling that the transaction should be carefully examined, and sales by a child to a parent must appear to be fair and reasonable. Such contracts are not, however, *prima facie* void, but there must be some affirmative proof of undue influence or other improper conduct to render the transaction void; for while the parent holds a powerful influence over the child, the law recognizes it as a rightful and proper influence, and does not presume, in the first instance, that a parent would make use of his authority and parental power to coerce, deceive or defraud the child. Therefore, it is

always necessary to prove some improper and undue influence, in order to set aside contracts between parents and children. As purchases by a parent in the name of a child do not create a resulting trust, but are presumed, in the first instance to be advances made by the parent to the child, so conveyances to the parent by the child may .be a proper family arrangement, and for the best interest of the child. If no such considerations can be found in the case, and the conveyance, after all allowances are made, is found to have been wrongfully obtained from the child, a court of equity will set it aside or convert the parent into a trustee. But the proceedings must be had at once. The child cannot wait until the parent's death, or until the rights of other parties have intervened." See cases cited in note, pp. 238–9.

In a case, which came before the Supreme Court of the United States (*Jenkins* v. *Pye*, 12 Pet. 241) involving the validity of a deed made by a daughter to her father, that Court in its opinion says:

" The first ground of objection seeks to establish the broad principle, that a deed from a child to a parent, conveying the real estate of the child, ought, upon considerations of public policy, growing out of the relation of the parties, to be deemed void; and numerous cases in the English chancery have been referred to, which are supposed to establish this principle. We do not deem it necessary to travel over all these authorities; we have looked into the leading cases, and cannot discover anything to warrant the broad and unqualified doctrine contended for on the part of the appellees. · All the cases are accompanied with some ingredient showing undue influence exercised by the parent, operating upon the fears or hopes of the child; and sufficient to show reasonable grounds to presume that the act was not perfectly free and voluntary on the part of the child; and in some cases, although there may be circumstances tending, in some small degree, to show undue influence; yet if the agreement appears reasonable, it has been considered enough to outweigh light circumstances, so as not to affect the validity of the deed.

" It becomes the less necessary for us to go into a critical examination of the English chancery doctrine on this subject; for should the cases be found to countenance it, we should

not be disposed to adopt or sanction the broad principle contended for, that the deed of a child to a parent is to be deemed, *prima facie*, void. It is undoubtedly the duty of courts carefully to watch and examine the circumstances attending transactions of this kind, when brought in review before them, to discover if any undue influence has been exercised in obtaining the conveyance. But to consider a parent disqualified to take a voluntary deed from his child, without consideration, on account of their relationship, is assuming a principle at war with all filial as well as parental duty and affection; and acting on the presumption that a parent, instead of wishing to promote the interest and welfare, would be seeking to overreach and defraud his child." 12 Pet. 253.

The doctrine of this case is recognized by the same court in *Taylor* v. *Taylor*, 8 How. 183, but the facts in the two cases are distinguished and in the latter the deed was set aside for fraud and false representation.

In *Greers* v. *Greers*, 9 Gratt. 332, a man in extreme old age conveyed the whole of his estate to one of his sons, and the court held, that as he had sufficient capacity to understand what he was doing, and there was no direct proof of fraud or undue influence, the improvidence and injustice of the act of disinheriting his other children did not give rise to a presumption of an abuse of confidence, or justify the court in setting aside the conveyance. See, also, *Wray* v. *Wray*, 32 Ind. 126; *Howe* v. *Howe*, 99 Mass. 88; *Findlay* v. *Patterson*, 2 B. Mon. 76; *Long* v. *Mulford*, 17 Ohio St. 485; 1 Story's Eq. Jur. § 309.

It seems to me that the decided weight of the authorities, especially in the American States, is that a conveyance from a child to its parent, whether with or without a valuable consideration, is presumed to be valid, in the absence of any circumstances or proof tending to show fraud, misrepresentation or undue influence, or reasonable grounds from which the court may presume that the act was not entirely free and voluntary on the part of the child.

But even if the law were otherwise, all the authorities agree that, a voluntary deed from a child to its parent can not be set aside after unreasonable delay. The complaint

must always be made in time and not after the death of the father. *Brown* v. *Carter*, 5 Ves. 877; *Jenkins* v. *Pye*, 12 Pet. 241; *Smith* v. *Thompson*, 7 Gratt. 112; *Bargamin* v. *Clarke*, 20 Gratt. 544; Hill on Trustees, 157; Perry on Trusts, § 201.

In *Turner* v. *Collins*, 7 Chy. App. Cas. 329, it was held: "A voluntary deed of gift cannot, after unreasonable delay, be set aside, though the gift was of a reversion and remained a reversion."

"Lapse of time, when it does not operate as a positive statutory bar, operates in equity as an evidence of assent, acquescence or waiver." Kerr on Fraud and Mistake, 305 and cases cited.

Let us apply these principles to the case at bar. The defendants, in their answers, specifically deny each and every allegation of mistake, fraud, misrepresentation and undue influence charged in the plaintiffs' bill. The burden of proving those allegations was, therefore, placed upon the plaintiffs, and they to sustain said allegations have filed in the cause the depositions of three witnesses, James Gardner, L. C. Rogers and A. J. Marks. It is not claimed that any of these witnesses were present at the execution of the deed here sought to be set aside; and no attempt was made to prove the circumstances preceding or attending its execution. James Gardner says, that from a conversation had with his brother, John Gardner, he understood that he held the title to the land in trust for his daughter; but on cross-examination he admitted that this was not what his brother said, but only an inference of his own. The exact language of this witness is, that: "He (John Gardner) said he held a title, and then gave his reasons for taking that title. When Pusey and his daughter were first married, he showed a disposition, he told me, to waste money, and that was his reason for taking the title—to save the property for his daughter; he didn't want it spent. In the same conversation he said that the property all came by his wife, and he wanted his children all equal, as he never designed to make a will; that the laws of West Virginia made them all equal. I understood from his conversation that he held that title in trust for his daughter." The witness says this conversation took place at Phila-

delphia in 1876, and it is the only one he ever had with his brother on the subject. From this testimony it is evident that the witness is either mistaken or he misunderstood what was said. The deed was executed *before* the marriage of the plaintiffs, yet the statement here is that when they were first married Pusey showed a disposition to waste money and that was his reason for taking the title. This certainly could not have been his reason, because it was impossible for him to know *before* the marriage what Pusey did *after* the marriage. The witness, Rogers, says, that about the year 1865 or 1866, 'Squire Gardner came to his father's house and said to him, "Ann and Pusey have sued me;" that his father asked him what for, and "he said for her interest in the land;" that his father then said to him, "I thought that you had got her to sign it to *you during her lifetime?*" He said "yes I got her to make me a deed, but that ain't worth a damn, for I gave her nothing." My father then told him he had better go and make a compromise with them, and he agreed he would try it. The witness then went with him to Wellsville where the plaintiffs resided; that there they met Pusey, and Gardner said to him, "why did you sue me?" Pusey answered, "for my wife's right." They then left the witness and after being gone sometime Gardner returned and he and witness started home, and on the way Gardner said that, "he had got it fixed; that he was to hold the *land his lifetime;* that he was going to build a house on the farm and move them up," and he says, "I can help them along a little and never mind it." Sometime after this Gardner did build a house on the farm and Pusey and family moved into it and lived there until the death of Gardner; that before he moved to the said farm he failed in business, and while on the farm he farmed part of it.

The only other witness, Marks, says, that about 1875 or 1876, he was in Virginia and stopped at the house of plaintiff and went from there to see 'Squire Gardner at his house. "He told me he had lived out his allotted time, and was now living by imposition. I told him it was about time he begun to fix up his affairs in this world. Then I talked to him about this deed from Mrs. Pusey to him, which she had made at the time she was married. I told him that it would

be a great outrage for Reason's and Reeves' heirs to get two thirds of Mrs. Pusey's interest in that farm.   He acknowledged that it would not be right. He told me he had it fixed so that Mrs. Pusey would get her interest in that farm."

This is the whole of the plaintiff's testimony in regard to the deed.   None of it in my judgment has even a tendency to show any mistake, fraud or misrepresentation on the part of the father.   The statement of Rogers, that Gardner told him he was to hold it his lifetime is unintelligible taken in connection with the undisputed fact that he was then and had been since 1833 in possession of the land as tenant by the courtesy if not as the owner in fee of Mrs. Pusey's one third.   The fact that a suit had been brought and settled by the parties; that the plaintiffs afterwards moved on the farm into a house built by the father, tends very strongly to show, that if ever there had been any ground of complaint it had been "fixed up," as Rogers testifies.   But without further particularizing, I am satisfied that, conceding these witnesses to be honest and their testimony, so far as it is not contradicted by the undisputed facts, entitled to credit, the conversations they attempt to relate are too imperfect, fragmentary and indefinite to warrant the conclusion at this late day, that there was any mistake, fraud or misrepresentation in the procurement of said deed.   *Horner* v. *Speed*, 2 Pat. & H. 616; 1 Greenl. on Ev. § 200; *Weidebusch* v. *Hartenstein*, 12 W. Va. 760.

In regard to the proof of undue influence or parental constraint there is none in the record.   All that is attempted is to show that Mrs. Pusey before her marriage was respectful and obedient to her father; that he was an honest, just and intelligent man with will enough to govern his family; that his daughter lived with him before, and she and her husband some time after, her marriage; that his daughter was an intelligent woman having graduated at the Steubenville seminary and was at the time of executing the deed twenty-three years of age.   There is not a particle of evidence or even an intimation that her father made any promise, threat or command to induce her to execute the deed.   It is not attempted to show any improper conduct of any kind whatever, before, at the time or after the execution

of the deed. Nothing whatever is shown incompatible with the presumption that the act was entirely free and voluntary on her part. The testimony is just as consistent with the presumption that she desired to make the deed as it is that her father suggested or procured her to make it.

It is, however, insisted that there was no consideration for the .deed. If it was the free and unconstrained act of the daughter, it is immaterial, under the law as hereinbefore stated, whether there was or was not a consideration for the conveyance. But if the law were otherwise, the deed acknowledges the payment of one thousand six hundred dollars, and it has not been shown that that acknowledgment is untrue. This was much more than the value of the property. At the time of the partition this whole farm was valued at four thousand eight hundred dollars, and Mrs. Pusy was entitled to but one third of it, subject to the life estate of her father who was then a young man for he lived forty-five years thereafter. Deducting this life estate six hundred dollers would have been the fair value of her remainder. This was not her whole estate for she did not convey her interest in the houses and lots at Wellsburg. If the one thousand six hundred dollars was not actually paid at the time it is very probable that it was paid in the building of the house on the farm for the plaintiffs to live in and a support on the farm after they moved to it; and that the whole difficulty if any ever existed was compromised and settled when the suit of the plaintiffs "for their rights" was dismissed.

But even if I am mistaken in the law and the testimony as just presented, the unreasonable delay of the plaintiffs is sufficient of itself to bar any right they may have to relief, if they had acted promptly. While they could not have sued for partition during the life of the life-tenant and during that time the statute of limitations did not run against the female plaintiff, still they had a right to sue in a court of equity from the time the deed was executed to have it set aside. A party may deprive himself of his equity by a delay which falls short of the statutory bar. "Lapse of time when it does not operate as a positive bar, operates in equity as an evidence of assent, acquiescence or waiver." The appellees here have been guilty of great *laches* in the assertion

of their claim. The deed now sought to be canceled was made thirty-five years before the institution of this suit. They have waited until all the original parties to be affected by their claim have died, and the means of explaining the transaction have been lost. It would be unjust not only to the living but to the dead to permit the appellees at this late day, without any excuse for their great delay, to take from infants property upon a claim which they never asserted against their ancestors—*Doggett* v. *Helm*, 17 Gratt. 96; *Wagner* v. *Baird*, 7 How. 234; *Badger* v. *Badger*, 2 Wall. 87.

3. The only remaining ground for setting aside said deed is that it was made in fraud of the rights of the male plaintiff just before his marriage. A conveyance made immediately before her marriage by a woman is *prima facie* good, and can be impeached only by proof of fraud. *Taylor* v. *Pugh*, 1 Hare 608, 616; *De Manville* v. *Compton*, 1 Ves. & Beam. 354. But whatever may have been the rights of this plaintiff under the authorities above cited, they have long since been lost by his *laches*.

For the reasons aforesaid, I am of opinion that the said decree of the circuit court of July 27, 1881, is erroneous and must be reversed and set aside with costs to the appellants against the appellees, Wm. C. Pusey and Rachel Ann his wife, and the cause is remanded to said circuit court for such further proceedings to be had therein, not inconsistent with this opinion, as may be in accordance with the principles and rules of courts of equity.

JUDGES JOHNSON AND GREEN CONCURRED.

DECREE REVERSED.     CAUSE REMANDED.