## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

PERKINS v. LANE.

MAY 6th, 1886.

1. EVIDENCE—*Admissions.*—When the admission of a party is the foundation of a claim asserted against him, *the whole* of his statement must be taken together.
2. IDEM—*Decrees—Conclusiveness.*—Where the petition setting up the claim sets out the admission, which makes mention of a decree, it must be taken as established that such decree was entered, and it is clear that the decree cannot be assailed collaterally. *Wimbish* v. *Breeden,* 77 Va. 324.
3. LACHES—*Case at bar.*—Here, from lapse of time, death of parties, destruction of records, and loss of papers, there can no longer be a safe determination of the controversy, and therefore the *status quo* should not be disturbed. *Nelson* v. *Kounslar,* 79 Va. 468.

Appeal from decree of circuit court of Louisa county, rendered March 23, 1883, in the chancery cause of *E. H. Lane's Executrix* v. *Day Lodge and als.*

The object of the suit was to settle the estate of the decedent. In that suit D. W. Perkins, administrator, with the will annexed of David A. Perkins, deceased, filed on March 22, 1882, a petition in that suit setting up a claim against said estate. The circuit court dismissed the petition, and the said administrator obtained an appeal to this court.

Opinion states the case.

*W. E. Bibb,* for the appellants.

*John H. Hunter, Jr.,* for the appellees.

LEWIS, P., delivered the opinion of the court.

This was a suit in equity in the circuit court of Louisa county, the object of which was the settlement of the estate of E. H. Lane, deceased. In the progress of the cause, to wit, on the 21st of March, 1883, the appellants filed a petition asserting a claim against the estate, which was rejected by the decree complained of.

It appears that some time prior to the late war a decree was entered in a suit, then pending in the said court, styled *Bunch and Wife* v. *Perkins and als.*, directing the sale of certain real estate. Sale was made, and duly reported to the court and confirmed. And at the April term, 1858, the said E. H. Lane was appointed a commissioner to collect the purchase-money bonds, and to deposit the proceeds in the Charlottesville Savings Bank. The appellants claim to have been entitled in whole, or in part, to the fund arising from the collection of these bonds.

The petition set forth the foregoing facts, and further alleged that in 1877 the said Lane, as counsel for Perkins' executor, filed a bill in the said court for the settlement of the testator's estate, in which, referring to the proceedings in the suit of *Bunch and Wife* v. *Perkins and als.*, the following language was used : " 1857—September term. Sale confirmed, and decree at April term, 1858, appointing E. H. Lane commissioner, by suit or otherwise, to collect the said bonds as they fall due, and deposit the same in the Charlottesville Savings Bank, and report to the court, and file said certificates. Accordingly, the said Lane collected the first and second of said bonds, and deposited as directed. The certificates (of deposit) were filed along with his report, which said report was duly confirmed by the court."

Upon this admission of Lane that he had collected the second bond, the claim asserted in the petition is founded. It is not denied, however, in the petition that Lane reported to the court that he had collected the bond and deposited the money in bank as directed, nor that the report was confirmed. But the allegation is, that in point of fact, he never deposited or accounted for the money collected on account of the second bond, and therefore that his estate is liable therefor to the petitioners.

The bond was dated August 15, 1857, and was payable two years after its date. Lane died in 1879; and it appears that the record of the suit of *Bunch and Wife* v. *Perkins and als.* was destroyed during the late war. It also appears that the certificate-books, journals, and other books of the Charlottesville Savings Bank have been lost or mislaid. Accordingly, the answer to the petition, while insisting that the statement in the bill prepared by Lane as to his action as commissioner, and the approval thereof by the court, is true, sets up as a further bar to the claim asserted, the *laches* of the petitioners, the staleness of the claim, the death of parties, and the loss of evidence.

At the hearing the circuit court, by its decree, dismissed the petition, and from that decree this appeal has been taken.

It is clear that, inasmuch as the admission of Lane that he had collected the first and second bonds, constitutes the foundation of the claim asserted in the petition, *the whole* of his statement must be taken together. And that statement is, that he not only collected the bonds, but deposited the money as directed, and reported his action to the court, filing with his report the certificates of deposit, and that his report was duly confirmed. And this is not in terms denied in the petition. It is only denied that the money was deposited or accounted for by Lane in his lifetime. So that we have the uncontra-

dicted statement that a decree was entered confirming the report of the commissioner, in which he reported as a fact, and exhibited the appropriate evidence of the fact, that he had deposited the money as directed by a previous decree, and there is no allegation of fraud.

We must therefore take it as established by the petition itself that such a decree was entered, and it is very clear that that decree cannot be collaterally assailed in this proceeding. *Lancaster* v. *Wilson*, 27 Gratt. 624; *Wimbish* v. *Breeden*, 77 Va. 324.

This of itself is decisive of the case, independently of the other grounds of defence relied on in the court below, and which amply sustain the decree appealed from. In other words, the case falls within the principle announced by this court in a long line of decisions, that those who invoke the jurisdiction of a court of chancery must do so within a reasonable time, instead of lying by until by their supineness and negligence there can no longer be a safe determination of the controversy. *Carr's Adm'rs* v. *Chapman's Legatees*, 5 Leigh, 176; *Caruther's Adm'rs* v. *Trustees of Lexington*, 12 Id. 617; *Smith* v. *Thompson's Adm'r*, 7 Gratt. 112; *Foster's Curator* v. *Rison*, 17 Id. 321; *Bargamin* v. *Clarke*, 20 Id. 544; *Harrison* v. *Gibson*, 23 Id. 212; *Carter* v. *McArtor*, 28 Id. 356; *Stamper's Adm'r* v. *Garnett*, 31 Id. 550; *Hatcher* v. *Hall*, 77 Va. 573; *Morrison's Ex'or* v. *Householder*, 79 Id. 627; *Nelson's Adm'r* v. *Kounslar's Ex'or*, Id. 468; *Wissler* v. *Craig's Adm'r*. 80 Id. 22.

Here the commissioner, whose transactions are the subject of controversy, and against whom no claim was asserted in his lifetime, is dead. The record and papers connected with the suit by which the truth of the matter could have been ascertained when those transactions were recent, have been destroyed. The journals and other books of the bank, in which the money in question was directed to be deposited, have been lost. And

in opposition to the positive and deliberate statement of the commissioner, who is affirmatively shown by the record to have been a gentleman of the highest integrity, of unusually retentive memory, and careful and accurate in the conduct of his affairs, is the deposition of the cashier of the bank before its suspension in 1865, to the effect that he has been able to find in the books of the bank only one entry of deposit by the late E. H. Lane, and that that deposit was made in October, 1858, and was probably the proceeds of the first bond above mentioned.

True, he says, the ledgers of the bank have not been lost, and that they ought to show the amounts and dates of all deposits. But may not the proceeds of the second bond have been deposited, and the fact not entered in the books of the bank? or, entered, if at all, in a book which has been lost? Can we with safety reject the positive statement of the dead commissioner, and accept in its stead the negative testimony of the cashier who, in the nature of things, could not have personal knowledge of all the varied transactions of the bank, extending over a period of several years? In short, it is manifest that under all these circumstances, and at this late day, no decree can be rendered for the appellants without doing injustice to the estate of a dead man.

In *Badger* v. *Badger*, 2 Wall., 87, it was said by the Supreme Court of the United States, and repeated in *Marsh* v. *Whitmore*, 21 Id. 178, that "a party who appeals to the conscience of the chancellor in support of a claim, where there has been *laches* in prosecuting it, or long acquiescence in the assertion of adverse rights, should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge

of the matters alleged in his bill, otherwise the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer." See also *Maxwell* v. *Kennedy*, 8 How. 210; *Brown* v. *County of Buena Vista*, 95 U. S. 157; *Godden* v. *Kimmell*, 99 Id. 201; *Wood* v. *Carpenter*, 101 Id. 135; *Landsdale* v. *Smith*, 106 Id. 391; *Etting* v. *Marx*, 4 Hughes, 312.

The application of this wise and well established rule is decisive of the point made in the argument, that the doctrine of *laches* cannot be properly applied to the present case because, it was said, the relation of counsel and client existed between Lane and the appellants, or those through whom they claim. It is not charged in the petition that such relation existed between the parties, nor is it shown by the evidence. Nor does the petition conform in any particular to the requirments of the rule just mentioned.

DECREE AFFIRMED.