### Staunton.

82   417
93   476

### MORGAN AND ALS V. FISHER'S ADM'R.

#### SEPTEMBER 23d, 1886.

1. FIDUCIARY—*Resulting trust.*—Where a fiduciary buys property with the trust assets, or an interest in the trust estate, such as a mortgage or the like, with his own funds, and the title is taken in his own name, he cannot hold the same for his own, but must hold it upon a resulting trust for the beneficiary.
2. IDEM—*Case at bar.*—Here the evidence shows that in paying for the land bought by her testator in his lifetime, the executrix was acting in her fiduciary character, and her payments enured to the benefit of the estate.
3. PURCHASERS—*For value without notice—Enquiry.*—Whatever puts purchaser on enquiry leading to ascertainment of charges on land, is sufficient notice.
4. LACHES—*Case at bar.*—Executrix paid, in 1850, the purchase money on the land purchased in 1840 by her testator, and took the conveyance to herself " as executrix." In 1854 she conveyed the land to a trustee (reciting in the deed that, though she was described in the conveyance to herself " as executrix," she had paid for it with her own means, and was hers), in trust to secure six bonds, payable to her son, by whom they were assigned to Fisher. After her death, Fisher's administrator, in 1881, instituted this suit to enforce the trust deed to satisfy said bonds, claiming that if the land was not her property, she was at least subrogated to the vendor's lien thereon as security for the money advanced by her, and that this lien passed by her trust deed—

HELD :

Fisher's rights had been lost by his laches.

. Appeal from decree of circuit court of Clarke county, entered January 1st, 1883, in the chancery causes of D. Fisher's admin-

istrator against Francis E. Sowers' administrator and others (other causes being heard therewith). And the defendants, Fannie M. Morgan, George K. Sowers, Hillary Burch and Elizabeth Burch, his wife, being aggrieved by the said decree, obtained from it an appeal and *supersedeas.*

In 1840 Geo. K. Sowers departed this life, leaving a will, which is as follows:

"I, George K. Sowers, of the county of Clarke, Virginia, make this my last will and testament: that all my personal and real estate shall belong to my wife, Francis E. Sowers, as long as she remains my widow; and should she marry, all the property, both real and personal, shall be equally divided among my children. Should she remain my widow, she is to divide the estate among my children at such time and in such portions as she may think just and right. I also appoint my brother, John W. Sowers, my wife's agent, and to remain such so long as he may think proper to act.

GEO. K. SOWERS."

*July* 23, 1840.

The will was admitted to probate at the August term, 1840, of the county court of Clarke county, and the widow at the same term qualified as executrix.

The personal estate was appraised at the sum of $6,427. The real estate consisted of a tract of land upon which the testator resided, and another tract adjoining it containing about 186 acres. The latter tract was purchased by the testator about one month before his death, of one John I. Johnston, and was subject to a vendor's lien amounting to about $6,000. It does not clearly appear whether or not the testator paid any portion of the purchase money in his lifetime. If he did, it is certain the amount paid did not exceed the sum of $600.

Soon after her qualification the executrix promised to pay

the Johnston debt, and gave her bonds, signed by her as executrix, for the same. And on the 1st day of September, 1840 (the implied vendor's lien not then having been abolished by statute), she took a conveyance of the land from Johnston and wife to herself as executrix, which was duly recorded. She also settled two executorial accounts, in both of which she credited herself as executrix with the moneys paid by her to Johnston.

In December, 1854, being indebted to her son, James Sowers, as evidenced by her six several bonds, she executed to Hugh M. Nelson, trustee, a deed of trust on the Johnston land to secure them, the deed reciting that though she was described in the deed from Johnston and wife of September 1, 1840, as executrix, yet the land was paid for out of her own means—to wit, the profits of the estate—and therefore was hers absolutely. The bonds thus secured were subsequently assigned by James Sowers to David Fisher, by whose administrator the present suit was instituted in 1881, its object being to enforce the deed of trust to satisfy the assigned bonds, which remained wholly unpaid.

Prior to the institution of the suit the widow died, intestate, having made no appointment of the estate, and to the bill the children of the testator, appellants here, were made parties defendant. They demurred to the bill, and also answered. They denied the right of the plaintiff to subject the land, on the ground that the estate of the widow therein was for her widowhood only, and that it consequently terminated at her death, she having remained the widow of the testator. They also defended on the ground of *laches* and lapse of time. On the other hand, the contention was that the Johnston land was paid for by the widow out of her own means, and consequently was hers absolutely. The circuit court was of opinion that she was entitled to be substituted to the vendor's lien on the

land, and that this right or interest was conveyed by her deed of trust to Nelson, to the extent, at least, that she had not previously conveyed her interest in the land to her son, William M. Sowers, and decreed accordingly; whereupon the defendants appealed.

*Dandridge & Pendleton*, and *M. McCormick*, for the appellants.

*McDonald & Moore*, and *J. J. Williams*, for the appellees.

LEWIS, P. (after stating the case), delivered the opinion of the court.

There is no doubt or difficulty as to the interpretation of the will. By its plain provisions the widow undoubtedly took an estate for her widowhood, with power, in case she remained the testator's widow, to divide the estate among the children, in such proportions as she might see proper, either in her lifetime or by her last will and testament. And it is equally certain that she took the estate subject to the rights of creditors (Code 1873, ch. 127, sec. 3), and also affected by a trust for the benefit of the children. *Knight* v. *Garbrough*, Gilm. 27; *Harrisons* v. *Harrison*, 2 Gratt. 1; *Steele* v. *Levisay*, 11 Id. 454; *Rhett* v. *Mason*, 18 Id. 541. It was, therefore, her duty as executrix to pay the debts of the estate, including of course the Johnston debt, so far, at least, as there were assets for the purpose. And it appears that she recognized her liability as executrix to pay the Johnston debt, first, in giving her bonds for the same, signed by her as executrix; next, in taking the deed for the land to herself as executrix; and, again, in charging the estate with the Johnston payments in the settlement of her executorial accounts.

It is true that her bonds signed as executrix bound her personally. 3 Rob. Pr. (new ed.) 265. It is also true that the effect of the deed from Johnston and wife was to convey to her the legal title. Nevertheless, the bonds and the deed, as well as the settlements, show that in making the Johnston payments she was professedly acting in her character of executrix, and that she intended the payments to enure to the benefit of the estate. Nor does it appear that she claimed to be entitled to an absolute estate in the Johnston land until many years after the transactions above mentioned had occurred; and then for the first time in her deed to Nelson to secure the bonds sought to be collected in this suit.

Moreover, the personal estate that went into her hands was appraised at the sum of $6,427; and although one of the witnesses testifies that the Johnston debt was paid out of the profits of the real estate, yet it is quite probable that a portion of the money at least was the proceeds of the personalty; for the reported debts, other than the Johnston debt, were not sufficient to exhaust that fund. But conceding that the land was paid for out of the usufruct of the estate, the result is the same. At most, the transaction was simply a loan by her to the estate, with which she discharged the Johnston debt, not in her individual right, and for the protection of her individual interest, but as executrix for the benefit of the estate. Hence when the debt was paid, the land became as fully subject to the terms of the testator's will as any other portion of his estate. That is to say, the widow was entitled to an estate therein for her widowhood, and at her death, she having remained the widow of the testator, it became the property of the children. In other words, the legal title conveyed by Johnston and wife was held by her in trust for the children.

Moreover, the doctrine of a resulting trust applies not only where property is purchased by a fiduciary with the assets of

his trust estate, and the title is taken in his own name, but the rule goes further. It applies as well where "a person standing in a fiduciary relation makes use of his position to purchase an interest in the trust property with his own funds, as a reversion, a junior or senior mortgage, or other interest from a third person; or if he purchase other property so immediately connected with the trust estate, and the independent ownership of which would seriously affect the use and value of the trust property, he cannot retain the same for his own benefit, but he must hold it upon a resulting trust for his beneficiary." 1 Perry on Trusts, secs. 127, 129.

In any view, therefore, the conveyance by the widow to Nelson was subject to the rights of the testator's children; since the recorded deed to her gave notice to the world that the land was paid for with trust funds, or, at least, it was sufficient to put purchasers upon inquiry. *Wood* v. *Krebbs*, 30 Gratt. 715; *Lamar* v. *Hale*, 79 Va. 147; *Effinger* v. *Hall*, 81 Va. 94.

The appellee also relies on the doctrine of subrogation. He contends that if an absolute estate in the "Johnston" land was not acquired by Mrs. Sowers, she was at least entitled to be subrogated to the vendor's lien thereon, as a security for the money advanced by her, and that this right passed by her deed to Nelson. But conceding that such right was acquired (*Kinney* v. *Harvey*, 2 Leigh, 70), and that it passed to Nelson, as contended for ( Code 1873, ch. 112, sec. 7), yet it is now too late to assert it. The land was purchased by the testator in 1840; the last payment by the executrix was made in 1850; and the present suit was commenced in 1881.

True, an unsuccessful attempt was made in another suit, pending in the same court, to collect the demands asserted in the bill; but that (it is probable from the record) was in 1871, and no further steps appear to have been taken in the matter until the commencement of the present suit.

In view of this long and unexplained delay, the bill ought to have been dismissed. The rule is, that parties having equitable demands, must prosecute their rights with reasonable diligence; otherwise courts of equity, acting upon their own inherent doctrine of discouraging stale demands, will refuse to interfere. This is a rule essential to the repose and welfare of society, and ought to be firmly enforced. The present case comes within·it, and the decree of the circuit court, subjecting the land to the plaintiff's claims, must be reversed. *Badger* v. *Badger,* 2 Wall. 87; *Carter* v. *McArtor,* 28 Gratt. 356; *Sullivan* v. *Portland, &c., Railroad Co.,* 94 U. S., 806; *Brown* v. *County of Buena Vista,* 95 Id. 157; *Perkins* v. *Lane,* 82 Va. 59.

DECREE REVERSED.