# Richmond.

GARLAND v. GARLAND.

April 30th, 1891.

1. ABSOLUTE ESTATE—*Incidents.*—No estate conveyed or devised absolutely to another, can be deprived of the incidents of alienability or liability for his debts.

2. WILL—*Unexpended Profits—Remainder—Case at Bar.*—Testator devised property in trust, so that "the profits is set apart for his brother's use under his superintendence; but neither the property nor profits shall be bound for his past debts, or for his future debts or liabilities, other than decent or comfortable support; at his death all said property is to pass to a trustee in trust for certain other persons:" *Held,* the brother took no absolute estate, but only a qualified right to support from the profits, subject to no liabilities except for supplies for support, and the unexpended profits at his death passed to the remaindermen.

Appeal from decree of circuit court of Lynchburg, rendered November 15th, 1888, in the chancery cause wherein John F. Slaughter, administrator *de bonis non* of Samuel Garland, Sr., *c. t. a.*, against Burr Garland's administrator *de bonis non, c. t. a.*, and as such substituted trustee for Paulina B. Morris and her children, in the place of Charles Y. Morris, Sr., deceased, and others; which is a sequel to the case of *Garland* v. *Garland,* 84 Va., 181.

The object of the suit was to enforce a decree rendered in the State of Mississippi against Burr Garland's estate and others, and for distribution under it. Decree for complainant and defendants appealed. Opinion states the case.

*Wm. J. Robertson* and *Ed. S. Brown*, for the appellants.

*Diggs & Manson* and *R. G. H. Kean* and *E. C. Burks*, for the appellees.

HINTON, J., delivered the opinion of the court.

As the case was presented on the former appeal, it appeared that Wm. H. Garland, executor of Burr Garland (deceased), had brought a suit in the proper court in Mississippi, to settle the administration accounts of his testator as administrator *c. t. a.* of Samuel Garland, Sr., deceased. That the court in Mississippi ascertained the amount due to be $64,130.88, and decreed that the domiciliary executor, the said Wm. H. Garland, should pay the same to John F. Slaughter, who had qualified in Virginia as administrator *de bonis non c. t. a.* of the said Samuel Garland, Sr. Burr Garland died in Virginia in December, 1869. On his death there was found in the hands of John T. Murrell, in Lynchburg, Va., the sum of $1,421.52, which was the remains of a sum of money said Burr Garland had deposited with him, on call, and subject to his, Burr Garland's, order. It also appeared that when Burr Garland died, he was in possession of certain conveyances or assignments to himself from several legatees of the said Samuel Garland, Sr., who were children of Nicholas Garland, a brother of the testator, of the legacies given to them in the will of Samuel Garland, Sr. Slaughter being unable by reason of Burr Garland's insolvency to make the money decreed by the Mississippi court in that State, and finding these assets in Virginia, brought suit in Virginia to enforce the Mississippi decree. To that suit Charles Y. Morris, administrator with the will annexed of Burr Garland, deceased, and Mary Garland, his surety, were made defendants.

Upon this state of facts this court held that the decree of the Mississippi court must be accepted as final and conclusive

evidence of the fact and amount of indebtedness by Burr Garland, the Mississippi administrator of Samuel Garland, to Samuel Garland's estate. And further, that the decree of that court did not undertake to distribute it, *nor to determine who are entitled to receive it* under Samuel Garland's will, but decreed it to be paid over to the Virginia domiciliary executor, to be by him distributed to those entitled according to the declared intention of the testator; "but this decision is without prejudice to any right of action which Paulina B. Morriss may have in this, or in an independent suit." When the case got back to the circuit court, the plaintiff filed his amended bill making Paulina B. Morriss and her children parties.

After the case had been matured for hearing, on application for an order directing accounts, the court proceeded to construe the 9th clause of the will of Samuel Garland, Sr., upon the true construction of which the present controversy must turn.

That clause is in these words:

"9th. My favorite brother, B. Garland, raised by me, and long a resident of Mississippi, is, and has for a long time past been, embarrassed in debt by losses of trade in 1837, and liabilities as surety for others. It might be unsafe to devise property to him absolutely. I therefore set apart in trust in the hands of my executor, for the benefit of my said brother, either of my plantations in Hinds county called 'Barrens' or 'Tudor Hall,' whichever he may *choose*, and forty slaves in families—say, about twenty-five hands, balance heads of families, children, and house-servants, to be selected out of the stocks on both places; mules, horses, stock, &c., sufficient for the cultivation of the place so selected by him, with provisions, house and kitchen furniture, plantation tools, &c., oxen, hogs, &c., to make a complete estate. The profits of the estate is set apart for his (B. Garland's) use under his superintendence. But neither the estate or profits shall be bound for his past debts, or for future debts or liabilities other than decent and comfortable support. At his death all the property in

this clause is to pass to Charles Y. Morriss, in trust to the separate use of his wife, Paulina B. Morriss and her children."

The circuit court was of opinion, and decreed "that the estate of the said Burr Garland in the profits set apart by the said clause for the use of the said Burr Garland became, and was, under the law and by virtue of said will, his absolute estate, and as such, liable not only for such debts as might be contracted for his decent and comfortable support, but for all his debts; and the said profits did not, nor did any part thereof, pass under the said will to the said Charles Y. Morriss, in trust for the separate use of the said Paulina B. Morriss and her children, nor did they, or either of them, acquire any estate or interest therein under the said will."

This, however, is not in our opinion the interpretation to be put upon the clause of the will now under review.

Burr Garland, as the very first words of this clause of the will says, was the favorite brother of the testator, by whom he had been raised. He had become so involved in debt by reason of losses in business, doubtless occasioned by the financial panic of 1837, and by liabilities incurred as surety for others, that it appeared to the testator practically impossible for him ever to free himself from this load of debt. In this condition the testator saw that an absolute gift or devise of property to him would be of no service to him, but would in effect be a gift of so much property to his creditors, who had not the slightest claim upon the testator. He therefore endeavored by a carefully devised trust to protect his brother in his declining years from penury and want by giving him the mere right to "a decent and comfortable support" out of the profits of an estate, the legal title to which, as well as to the profits, he is careful to confer upon the trustee. And having made this provision for his brother, a provision strictly limited to the use of so much of the profits as was necessary for "a decent and comfortable support," and having declared that neither the estate or profits shall be bound for his past debts

or liabilities, or for future debts incurred on any other account, he gives all the property in this clause, clearly meaning the estate and any surplus profits, over to Charles Y. Morriss in trust, to the separate use of his wife, Paulina B. Morriss, and her children.

Now, this being the purpose of the testator, too clearly manifested to require any verbal criticism upon the mere words of the will, the only remaining inquiry is, whether this intention shall be allowed to prevail, or, to express the same idea differently, whether there is any rule of the court of chancery in this State which defeats it.

On behalf of the appellees it is insisted that the testator by his will gave to Burr Garland the profits therein mentioned absolutely, and that the exemption of the profits from liability for Burr Garland's debts is void, because they say that it is a fundamental doctrine of the English chancery, and that the same rule prevails in America, that no such estate can be deprived of the incident of alienability or liability for the debts of the owner.

But this argument seems to me to be beside the mark.

In this case the devisee and legatee, Burr Garland, did not take any absolute property in the profits of the estate which he might have assigned or aliened, but on the contrary, he acquired the mere, although exclusive, right to a perception of so much of said profits as would furnish a decent and comfortable support for himself, and this was so qualified and limited as to fence out all his creditors except those who furnished him supplies for his support. Had he undertaken to expend these profits in any other way, he would have been guilty of a breach of trust, for there was in the eye of a court of equity as complete a trust in him to apply these profits in this one direction as there was in the trustee to hold the legal title. And while he, Burr Garland, took this qualified right, which we think it is a misnomer to call property, the remaindermen took a vested remainder in all the surplus or unexpended

profits. It is admitted that this exact question has never been decided in Virginia, although several cases have arisen in this State where the trusts were held to be blended, and therefore, that donee had interest that was divisible from the other *cestuis que trust*, and therefore, no property that could be subjected to his debts.

But in *Nichols* v. *Handly*, 10 Gratt, 336, Judge Samuels, delivering the opinion of the court, said : " There is nothing in the nature or law of property which could prevent the testatrix, when about to die, from appropriating her property to the support of her poor and helpless relations; nothing to prevent her from charging her property with the expense of food, raiment, and shelter for such relations. There is nothing in law or reason, I conceive, which should prevent her from appointing an agent or trustee to administer her bounty."

But the question has been carefully considered by the supreme court of the United States in the case of *Nichols* v. *Eaton*, 91 U. S., 716, and by the supreme court of Massachusetts in the case of *Broadway National Bank* v. *Adams*, 133 Mass., 170, and in each case it was held that there was nothing in the doctrines of the American chancery which prohibits a trust like the present.

The reasoning of these cases commends itself to our judgment and fully establishes the validity of this trust.

The decree of the court below being in conflict with these views, must be reversed, and the cause must be remanded for further proceedings to be had in accordance with this opinion.

DECREE REVERSED.