GARLAND'S ADM'R *et al.*

*v.*

GARLAND'S ADM'R *et al.* (two cases).

(*Supreme Court of Appeals of Virginia, April 2, 1896.*)

[24 S. E. Rep. 505.]

### Administrators*—Claims Barred by Laches—Case at Bar.

Where, in a suit for the settlement of an estate, it appears that the original plaintiff, the administrator against whom the suit was brought, and the chief cestui que trust are all dead; that the claims as to the first year's transactions arose 30 years ago; that another claim involves the settlement of accounts, running through 5 years, between parties who have since died; that another involves transactions covering a period of 9 years, commencing more than 30 years ago, and that no books, accounts, or vouchers can be produced to substantiate them,—the claims will be rejected, as barred by limitations and laches.

### Same—Expenses of Estate—Counsel Fees.

Counsel fees and expenses incurred in taking depositions in support of a claim are not proper charges against decedent's estate.

### Same—Payment by Surety on Bond of—Interest.

Where a surety on an administrator's bond pays costs decreed against her principal, such payment becomes a debt due her from the administrator, and bears interest as any other debt against him.

### Rights of Widow in Assets—Distribution among Residuary Legatees.

The widow's rights, if any, in the assets of a testator's estate, must be determined before the assets are decreed to the residuary legatees.

Appeals from circuit court of city of Lynchburg.

Suit by the administrator of Samuel Garland, deceased, and others, against the administrator of Burr Garland, deceased,

---

*See monographic note on "Executors and Administrators," Va. Rep. Anno.

and others, and. a suit by the administrator of Samuel Garland, Sr., deceased, against Mary L. Garland and others. From separate decrees in the two cases, various defendants appeal. Both reversed.

*Edward S. Brown* and *Wm. J. Robertson*, for appellants.

*J. Singleton Diggs* and *Duke & Duke*, for appellees.

CARDWELL, J., delivered the opinion of the court.

This case is a sequel to the case of Garland's Adm'r v. Garland's Adm'r, twice appealed to this court. 84 Va. 181, 4 S. E. 334; 87 Va. 758, 13 S. E. 478. The facts out of which the litigation arose are so fully set out in the opinions of this court on the former appeals that it will be needless to repeat many of them here.

On the first appeal it was decided that, as to the amount of the indebtedness of Burr Garland to Samuel Garland, Sr.'s, estate, the Mississippi decree was final and conclusive ; but that decision was without prejudice to any right of action which Paulina B. Morriss might have in this or in an independent suit, and the cause was remanded to the circuit court of Lynchburg, with leave to the appellant to amend his bill, and make all parties deemed requisite parties to the cause. In February, 1888, the plaintiff amended his bill, making M. J. Day, sergeant of Lynchburg, and, as such, administrator d. b. n. c. t. a. of Burr Garland in Virginia, to whom the estate had been committed on the death of Charles Y. Morriss, the executor, and Paulina B. Morriss and her children, and the representatives of those who had died, parties defendant. Mrs. Mary L. Garland, widow of Samuel Garland, Sr., who had been sued with Charles Y. Morriss, as surety on his bond as executor of Burr Garland, and Mrs. Morriss and her children all answered the original and amended bill, averring and insisting, for Mrs. Garland, that she was entitled to one-half of the profits realized from

the real estate of the testator in Mississippi, known as "Barrens," and the personal property thereon, from the death of the testator in 1861 to the assignment to Mrs. Garland of her one-half of the estate of the testator, Samuel Garland, Sr., in 1864, and to the proceeds from the sales of certain cotton, corn, and other personal property that had been allotted to her in the division, and sold by Burr Garland, administrator c. t. a. of Samuel Garland, Sr., in Mississippi ; and claiming for Mrs. Morriss and her children the surplus profits from the Tudor Hall estate in Hinds county, Miss.; selected by Burr Garland under the ninth clause of the testator's will, it being averred that these profits and the proceeds from the sale of the cotton, etc., had been carried, without discrimination, into Burr Garland's administration accounts, and formed a part of the balance of $64,130.88 found against him in the final settlement, and that Burr Garland had rendered to these claimants no account of such profits, or of the sales made by him, and that his estate was therefore still indebted to them for these profits and the proceeds from the sale of Mrs. Garland's property, alleged to have been made by him, and that there was no outstanding indebtedness of the estate of Samuel Garland, Sr.,—and they prayed that an account be taken of the profits, and of the proceeds from the sale of the cotton, etc., that had been carried into the administration accounts of Burr Garland ; that an account of the indebtedness of Burr Garland's estate, and of the priorities thereof, be taken and reported, as well as an account of any outstanding debts of the estate of Samuel Garland, Sr. ; and that what these respondents are entitled to should be decreed directly to them, and not to the administrator of Samuel Garland, Sr.   M. J. Day, late sergeant of Lynchburg, to whom the trusteeship of Paulina B. Morriss and her children had also been committed, answered the bill, as administrator of Burr Garland, and as trustee for Mrs. Morriss and children, relying and insisting on the averments and defenses in the answers of Mrs. Garland and of Mrs. Morriss and her children,

and on former exceptions which had been taken to the commissioner's report, and praying also for an account of the indebtedness of Burr Garland, and the priorities thereof, especially the indebtedness to Mrs. Morriss and her children and to Mrs. Mary L. Garland, and that the court would determine the rights of all parties in and to the estate of Burr Garland. These respondents also prayed that the cause instituted by Samuel Garland, Sr.'s, executor against Mary L. Garland and others in May, 1862, and this cause, instituted by John F. Slaughter, administrator, d. b. n. c. t. a. of Samuel Garland, Sr., against Burr Garland's administrator, etc., in September, 1880, be heard together, and that the estates of Samuel Garland, Sr., and of Burr Garland, both deceased, be administered under the control and supervision of the court.

On these pleadings, the ninth clause of the will of Samuel Garland, Sr., was to be construed, and it was agreed between the parties, before proceeding to take accounts, to submit to the court the construction of the ninth clause ; John F. Slaughter, administrator, contending that, under this ninth clause, Burr Garland took a life estate in the corpus of the legacy, and that he was entitled absolutely to the profits, and that the profits should be subjected to the payment, in part, of the decree for $64,130.88 against Burr Garland, rendered in the Mississippi court. The lower court decided that Burr Garland took the profits absolutely, and that the profits were liable to all his debts alike, whether contracted for his support or not, and that the corpus of this legacy passed in remainder to Mrs. Morriss and her children. It was from the decree of the lower court deciding this question that the second named cause came again to this court on appeal. 87 Va. 758, 13 S. E. 478. On this appeal this court reversed the lower court, and held that, under the ninth clause of Samuel Garland, Sr.'s, will, Burr Garland took no absolute estate, but only a qualified right to a support from the profits, subject to no liabilities except for supplies for support, and that the unexpended profits at his death passed to

the remaindermen. Id. Referring to the former decision (84 Va. 181, 4 S. E. 334), and to the decree of the Mississippi court, that the executor of Burr Garland in Mississippi should transmit to Virginia $64,130.88, this court further said "that the decree of that court did not undertake to distribute it, nor to determine who are entitled to receive it under Samuel Garland's will, but decreed it to be paid over to the Virginia domiciliary executor, to be by him distributed to those entitled, according to the declared intention of the testator." The decision of the lower court was reversed, and the cause remanded for further proceedings; and the circuit court, by its decree at the May term, 1893, referred the cause to Commissioner Charles H. Sackett, —Commissioner Bocock having died,—to execute the orders of account theretofore entered in the cause, among which accounts to be stated was an account of all debts of the estate of Burr Garland, deceased, and their priorities, if any. The claims of Mrs. Garland and Mrs. Morriss and her children were asserted before Commissioner Sackett only on behalf of Mrs. Morriss and children, as Mrs. Garland had assigned to them her claim, "to be treated as if for profits, as specified in the ninth clause of the will of the testator, Samuel Garland, Sr."

These claimants contended that, as the whole of the profits arising from the Mississippi estate, from the death of the testator in 1861 to the assignment to Mrs. Garland of her portion of the estate in 1864, and the proceeds from the sale of cotton and other personal property allotted to her in the division, as well as the surplus profits from the Tudor Hall plantation after 1864, had gone into the hands of Burr Garland, and had been taken into account in the proceedings in the Mississippi court, wherein the amount decreed against Burr Garland, in favor of Samuel Garland, Sr.'s, estate, for $64,130.88, was ascertained and fixed, the claimants should be considered as entitled to have the amount due them on account of said profits, and the sale of property belonging to Mrs. Garland out of the assets of Burr Garland in the hands of his administrator in Virginia, before

these assets could be applied to the discharge of the liability of Burr Garland's estate to the estate of Samuel Garland, Sr., under the Mississippi decree, or that they should at least be considered as entitled to a ratable share of such assets. Among the demonstrative legacies bequeathed by Samuel Garland, Sr., there appears, in the fifteenth clause of his will, the following : "I give to each of my brother Nicholas A. Garland's children, of Illinois, one thousand dollars of my East Tennessee & Virginia, Railroad bonds, or others of equal value." It appears that there were ten of the Nicholas Garland children, and that John F. Slaughter, while administrator c. t. a. of Samuel Garland, Sr., acquired from two of these children title to their legacies ; and that Burr Garland, while administrator c. t. a. of Samuel Garland, Sr., in Mississippi, in 1869, acquired title from the remaining eight children to their respective legacies, taking from them an assignment in writing, together with authority to John E. Slaughter, administrator c. t. a. of Samuel Garland, Sr., in the state of Virginia, to pay the whole of each legacy to Burr Garland, etc. Therefore, it was further contended, by Mrs. Morriss and her children, in their own right and as assignees of Mrs. Garland, the widow, that the claim to these legacies constitutes assets in the hands of Burr Garland's administrator in Virginia, and that the legacies should be collected by him from the estate of Samuel Garland, Sr., and applied, along with other assets in his hands, to the payment of the claim asserted by Mrs. Morriss and her children against Burr Garland's estate.

The issue between Mrs. Morriss and her children, and the administrator of Burr Garland, deceased, to be determined by Commissioner Sackett, and reported to the circuit court of Lynchburg, was whether Mrs. Morriss and her children, in their own right and as assignees of Mrs. Mary L. Garland, had a good and valid claim against Burr Garland's estate for any profits received by him from the Mississippi estate between the date of his qualification as administrator in Mississippi and the date on which Mrs. Garland's portion of the estate in Mis-

sissippi was allotted and set apart to her, or for cotton or other property of Mrs. Garland sold by him, or for any surplus profits arising from the Tudor Hall estate after the same was selected by Burr Garland under the ninth clause of the will, and, if so, the amount of such claim or claims. Commissioner Sackett, in response to the decree referring the cause to him, reported against the claims asserted by Mrs. Morriss and her children, and credited the Mississippi decree in favor of Samuel Garland, Sr.'s, estate by the amount Burr Garland had paid to the Nicholas Garland children for their legacies, showing the balance due to the estate of Samuel Garland, Sr., on the Mississippi decree, to be $129,658.61, including interest to May 10, 1894. The commissioner further reports a settlement of the account of Charles Y. Morriss as the administrator of Burr Garland, deceased, in Virginia, showing a balance due from the administrator to Burr Garland's estate of $3,185.11, with interest on $1,332.53, the principal sum, from May 10, 1894 ; but in this connection, he says : "Mrs. Mary L. Garland was security upon the bond of Charles Y. Morriss as administrator of Burr Garland, and in that capacity was made a party to this suit. By the decree of the court of appeals in this suit, rendered December 2, 1887, Charles Y. Morriss, as administrator of Burr Garland, deceased, out of the assets of his intestate's estate, was ordered to pay the cost of said appeal. This cost was paid by Mrs. Mary L. Garland, on the 11th day of July, 1888. And she is entitled to receive the same out of above balance.

Am't cost paid by her 11th July, 1888. . . . $254 99
Interest on same to 10th May, 1894. . . . . . 89 20

　　　　　　　　　　　　　　　　　　　$344 19"

The commissioner also included in his report two special statements, one of which showed the then present value of the eight legacies purchased by Burr Garland of the children of Nicholas Garland in 1869, and the other a statement purporting to be of the items which make up the Mississippi decree

against Burr Garland's estate.   He also suggests that, in deter-
mining the right of Mrs. Garland to any portion of the Mis-
sissippi decree, whether of corpus or profits, she should be
charged with $3,000, a year's allowance paid to her from the
Mississippi estate, and certain articles of personal property to
the value of $250, and also $1,000 paid to her in 1869 by
Burr Garland, by draft on Aiken & Watts, on account of some
of his transactions with her.   The Mississippi decree in favor
of Samuel Garland, Sr.'s, estate against Burr Garland's estate
is reported as a fiduciary debt, and as the only debt outstand-
ing against the latter's estate.   Upon the filing of this report,
the circuit court of Lynchburg made the following decree:
"By consent of parties, it is ordered that these causes be sub-
mitted to the judge, to be heard in vacation, at such time as
he may appoint, and for such decision and decree therein in
vacation as might be made in terms ; and leave is reserved to
the parties in the meantime to take such exceptions to the
report of Commissioner Sackett, filed the 9th of May, 1894,
as they may deem advisable.   *   *   *   But this submission of
the two causes   *   *   *   is without prejudice to either party to
move in vacation that they be separated, and for such decree
in vacation in either or both of them as might be made
in term."

On February 12, 1895, the two causes were brought
on to be heard by the circuit court, on the papers for-
merly read in them, respectively,—the second (Samuel Gar-
land, Sr.'s, Adm'r v. Burr Garland's Adm'r et al.) on
the report of Commissioner Sackett, filed May 9, 1894,
exhibits therewith, depositions, documentary evidence, excep-
tions to said report, etc.,—and all the papers in the first-named
cause which were proper to be considered in determining the
second cause, as first-named cause was not then for considera-
tion, except in so far as it affected the merits of the second
cause, and overruled all exceptions to the report of Commis-
sioner Sackett, as well as all special statements in the report,

and confirmed the same. The court then proceeded to decree that Garland Morriss, administrator of Charles Y. Morriss, deceased, out of the assets of his intestate, pay to Mary L. Garland $344.19, with interest on $254.99 from May 10, 1894 ; and that Morriss' administrator out of the assets of his intestate, and Mary L. Garland, as surety for Charles Y. Morriss, out of her own estate, pay to Samuel H. Johnson, sergeant, and, as such, administrator d. b. n. c. t. a. of Samuel Garland, Sr., the sum of $2,840. 92, with interest on $1,077.53 part thereof from May 1, 1894, till paid, that being the balance of the assets of Burr Garland's estate. It was also decreed that the substituted trustee for Mrs. Morriss and her children, and other parties interested in the trust fund, pay to the plaintiff his costs in the case of Samuel Garland, Sr.'s, Adm'r v. Burr Garland's Adm'r, other than those adjudicated by this court (court of appeals) ; but the decree directed that no execution should issue against Mary L. Garland until the further order of the court, as her further interest in the estate of Samuel Garland, Sr., was yet to be ascertained in the first-named cause,—Samuel Garland, Sr.'s, Adm'r v. Mary L. Garland. On May 16, 1895, the circuit court, by its decree in the cause of Samuel Garland's Adm'r v. Mary L. Garland, referred that cause again to Commissioner Sackett to state and report further accounts relating to the administration of the estates of Samuel Garland, Sr., Samuel Garland, Jr., and Charles R. Slaughter, and to pass upon the exceptions of Samuel Garland's administrator filed to his former report, and this decree proceeded as follows : ''And it appearing that the whole fund in the hands of the receivers belongs to the estates of Samuel Garland, Jr., and Charles R. Slaughter, the court doth further adjudge, order, and decree, that Receivers R. T. W. Duke, Jr., and J. Singleton Diggs do pay and deliver to J. Singleton Diggs, administrator of Samuel Garland, Jr., and the same as administrator of Charles R. Slaughter, all the money, bonds, and other estate in their hands as such receivers, and make a full report

thereof to the court.'' From these two decrees an appeal was allowed to this court, on the petition of Mrs. Mary L. Garland, the administrator of Burr Garland, and trustee for Mrs. Morriss and children, and other parties interested in the trust fund.

We consider it unnecessary to review the assignments of error in the petition for this appeal seriatim. The first question presented is whether there is error in the decree of the lower court rejecting the claims of Mrs. Garland, and of Mrs. Morriss and her children, asserted against the estate of Burr Garland. Burr Garland qualified as administrator c. t. a. of Samuel Garland, Sr., in Mississippi, as early as 1862, and had charge of the whole estate of the testator in that state until September, 1864, when Mrs. Garland was assigned her half interest in the estate in Mississippi, both real and personal, to which she was entitled under the laws of that state, there being no children by her marriage with the testator; and at the same time that this division of the Mississippi property was made Burr Garland selected, under the ninth clause of the will, the Tudor Hall plantation, with the personal property thereon, which he cultivated and managed till 1868, when he rented it out for the year 1869. In 1869 he came to Virginia and died. It does not appear that Mrs. Garland, or Mrs. Morriss' trustee, ever made any demand upon Burr Garland, in his lifetime, for the payment of the claims that have been asserted against his estate in the suit in which the decree of February, 1895, appealed from, was entered. Nor were these claims ever asserted in court, after his death, until 1888, when the answers of Mrs. Garland and Mrs. Morriss and her children were filed to the amended bill exhibited by Samuel Garland, Sr.'s, administrator, in his suit against Burr Garland's administrator and Mrs. Garland, surety on the latter's administration bond. These claims were but personal, legal demands, and should have been asserted within the period prescribed by the statute. There were no circumstances surrounding the claims or the parties that prevented the application of the statute.

The position taken by counsel, that the pendency of the suit of Samuel Garland, Sr.'s, Adm'r v. Mary L. Garland, instituted in 1862, suspended the operation of the statute, is wholly untenable. That was a suit for the settlement of Samuel Garland, Sr.'s, estate, and for the distribution thereof, and in which there was not, nor could have been, a decree for an account of debts against Burr Garland or his estate. In the suit of Samuel Garland, Sr.'s, Adm'r v. Burr Garland's Adm'r et al., there was no decree for an account of debts against Burr Garland's estate until after the filing of the amended bill therein and the answers of Mrs. Garland and of Mrs. Morriss and children, in 1888, as we have seen. So it appears that it was nearly 18 years after the death of Burr Garland before these personal, legal demands were asserted against his estate, and, when asserted, they are set forth in the most vague and indefinite manner. Moreover, the proof adduced before Commissioner Sackett in support of the claims is equally vague and indefinite. The proof does not even show that there were any profits arising from the estate of the testator in Mississippi before the division, or that there were any surplus profits from the Tudor Hall estate after it was selected by Burr Garland in 1864. The tendency of the proof is decidedly to the contrary. It appears clearly, by the testimony, that in 1865, after the devastations of the war had been visited upon the whole of the section in which the Tudor Hall estate was situated, this estate was in a greatly damaged condition. Buildings had been destroyed, fences removed or destroyed, and other great injuries sustained, making it necessary for Burr Garland to incur large expense in repairing the injuries. It is not clear what rent he received from the property for the year 1869, but it seems that it could not have exceeded $2,000 per annum, from which Burr Garland was to have his support, specified in the ninth clause of the testator's will, and the taxes were to be paid and repairs to be made. The condition of Burr Garland's estate would clearly indicate that no profits had been realized

from his operations in Mississippi.   By the settlement of his account as administrator of Samuel Garland, Sr., made in the latter part of 1868, he was indebted to the estate $6,545.09, and on the 3d of February, 1869, he deposited $5,000 to his credit with his commission merchants, out of which he paid for six of the legacies bought of Nicholas Garland's children by drafts on this firm, the two other legacies being paid for in some other way ; and when he died he had only $1,421.32 in the hands of a friend in the city of Lynchburg, with whom he had deposited a sum of money subject to his call, and which is directly traced as a part of the money deposited with his commission merchants, as before stated.   This balance of $1,421.32 constituted the whole estate left by Burr Garland, treating the amounts paid by him to the Nicholas Garland children as payments, instead of purchases, of their legacies ; and the balance due from him to the estate of Samuel Garland, Sr., upon a final settlement of his accounts in Mississippi, was, as we have seen, $64,130.88.

It was said by Lord Camden, in Smith v. Clay, 3 Brown, Ch., 639 :  ''If, from the delay which has taken place, it is manifest that no correct account can be rendered,  that any conclusion to which the court can arrive must at best be conjectural, and that the original transactions have become so obscured by time, and the loss of evidence, and the death of parties, as to render it difficult to do justice, the court will not relieve the plaintiff.   If, under the circumstances of the case, it is too late to ascertain the merits of the controversy,  the court will not interfere, whatever may have been the original justice of the claim.''   Accordingly, it was held that, although the time which had elapsed might not, of itself, constitute a statutory bar to the claim asserted, yet that the neglect of the parties for 14 years to prosecute their suit, when considered with other circumstances in the case, justified the dismissal of the plaintiff's bill.   Hatcher v. Hall, 77 Va. 576, and cases cited. See, also, Smith v. Thompson, 7 Grat. 112 ; West v. Thornton,

Id. 177 ; Tazewell v. Whittle, 13 Grat. 329 ; Gibboney v. Kent, 82 Va. 383, 4 S. E. 610 ; Morgan v. Fisher, 82 Va. 417 ; Rowe v. Bentley, 29 Grat. 756, 759. The reasoning of the authority quoted above applies peculiarly to this case. As was well said by the commissioner, in his report on this branch of the case : "It never seems to have been contemplated by any one that Burr Garland, or his estate, could be held liable for the surplus profits of the estate selected by him, over and above a decent and comfortable support, until about 10 years after his death, when the question was raised first and adjudicated in Virginia. Hence no account was ever kept by Burr Garland, or any one else, of the receipts and disbursements from the Tudor Hall plantation after his selection thereof. * * * " It may be added that the plaintiff, who instituted this suit for the settlement of Burr Garland's estate is dead ; Morriss, his administrator, against whom the suit was brought, and who attempted to set up a counterclaim against the estate he was administering, is dead ; the chief cestui que trust, Mrs. Morriss, is dead; the claims arose, as to the first year's transactions, in 1865, 30 years ago ; and the man against whom they are asserted has been dead for 25 years. The Morriss claim involves the settlement of accounts, running through 5 years, between Morriss, trustee, and Burr Garland, both dead ; and the other, according to the contention of counsel, involves transactions covering a period of 9 years, commencing about 1862, between Burr Garland, deceased, and Mrs. Garland ; and there was never any account kept at the time of the transactions, and not a single book, account, voucher, or other paper is now produced to substantiate either claim. The decree rejecting these claims, as barred by both the statute of limitations and laches, is plainly right.

The assignment of error to the decree of February 12, 1895, that the circuit court held Burr Garland's purchase of the Nicholas Garland children's legacies void, is founded upon misapprehension. The court did not so hold, but held the transactions

to be a payment and consequent extinguishment of that charge against Samuel Garland, Sr.'s, estate, and credited Burr Garland, as administrator, with the amount he paid the legatees, upon the ground that, at the time of the alleged purchase by Burr Garland, the funds in his hands as administrator were as much applicable to the satisfaction of these and all other legacies as the funds in the hand of the Virginia personal representative of Samuel Garland, Sr.'s, estate : But if this view could be considered as incorrect, no injury is done to appellants ; for, if it were held that Burr Garland's estate owned these legacies, and was entitled to have them paid out of the assets of Samuel Garland, Sr.'s, estate, they would have to be treated merely as a set-off against the Mississippi decree, and, when so applied, would still leave a very large sum due on this decree. Whether Burr Garland paid for these legacies with his own money, or with money belonging to his testator's estate, the result, under the circumstances, is practically the same.

The next assignment of error is equally as untenable, and is also founded on misapprehension. The circuit court did not decide that Mrs. Garland, the widow, was not entitled to half of the assets that the estate of Samuel Garland, Sr., might realize on the Mississippi decree, nor did the court hold that Mrs. Garland would not be entitled to her share of any assets belonging to Samuel Garland, Sr.'s, estate that have not heretofore been subjected to a division. On the contrary, the decree says "that the further interest of Mary L. Garland in the estate of Samuel Garland, Sr., is to be ascertained in the first-named cause,"—that is, in the cause of Samuel Garland's Adm'r v. Mary L. Garland, in which the estate can only be distributed. Hence it follows that the next assignment of error, complaining of the decree being against Mrs. Garland for the whole $2,840, instead of allowing her the portion thereof she might be entitled to as widow, is also conceived under misapprehension. The court was dealing with her only as surety for Morriss, administrator of Burr Garland, and her rights as

widow and her accounts as distributee of her husband's estate were in nowise involved.   She is unquestionably entitled to one-half of the assets belonging to the estate of her deceased husband that have not heretofore been subjected to division ; but her claim thereto cannot be passed upon, and her share of such assets decreed to her, until recovered by the administrator c. t. a. of Samuel Garland, Sr.

The next assignment of error is also without foundation. The court did not hold that Mrs. Garland should now account to the estate of Samuel Garland, Sr., for $3,000, the one year's allowance, and for $250, the valuation of exempted articles under the Mississippi decree.   The decree appealed from does not even mention this subject, and the commissioner only suggested that, if the court should determine that Mrs. Garland was entitled to any profits or other money that went into the Mississippi decree against Burr Garland's estate, these sums should be taken into account; and this was a correct view.

The next and last assignment of error is well taken.   It is to that part of the decree of May 16, 1895, which directs the receivers of the court, in whose hands the assets of Samuel Garland, Sr.'s, estate were, to deliver all the money, bonds, and other estate in their hands to the administrator of the residuary legatees.   This was erroneous.   While there are no debts outstanding against the testator's estate, as is conceded, the assets of the estate should not have been decreed to the residuary legatees until the rights of the widow, if any, in those assets, were determined.

Appellees assign as error to the decree of February 12th the ruling of the court in not sustaining an exception to Commissioner Sackett's report allowing to Morriss, as administrator of Burr Garland, counsel fees and expenses incurred in taking depositions in support of the claim asserted by Mrs. Morriss and children against Burr Garland's estate.   This was also

error, the exception should have been sustained. These were not proper charges against Burr Garland's estate.

It is contended, also, by appellees, that no interest should have been allowed on the amount paid by Mrs. Garland as surety for Morriss, administrator, for costs decreed against the administrator and his surety by this court on the first appeal in this case. This contention cannot be sustained. While costs do not usually bear interest, Mrs. Garland paid the amount of costs decreed against her as surety by this court, and, upon its payment, the amount paid became a debt due to her from the estate of Morriss, and should have borne interest, as any other debt against the estate.

It is furthermore contended by appellees that the circuit court should have decreed all the costs of this suit to be paid by the Morris trust fund, instead of the costs "other than those adjudicated by the court of appeals." This contention cannot be upheld, as the circuit court had no power to reverse or alter the decree of this court on the former appeal and that question cannot be brought back here on this appeal for consideration. While the authorities cited by appellees do show that this court has, upon a final determination of the cases, adjusted the costs among the losing parties, and even corrected errors as between the parties liable to costs, it does not appear that, upon a final determination of any case, this court sanctioned the view taken in this assignment of error.

For the foregoing reasons, we are of opinion that the decree of February 12, 1895, is right in all respects, and should be affirmed, except in so far as it overruled the exception of appellees to the report of Commissioner Sackett allowing Morriss, administrator of Burr Garland, the sum of $60 for counsel fees and expenses in taking depositions in support of the claim of Mrs. Morriss and children. In this respect the decree is reversed, that this error may be corrected. We are further of opinion that it was error, in the decree of May 16, 1895,

entered in the cause of Samuel Garland, Sr.'s, Adm'r v. Mary L. Garland, to direct the receivers of the court to deliver all the money, bonds and other estate in their hands to the administrator of the residuary legatees; and in this respect this decree is reversed and annulled, and these causes are remanded to the circuit court of Lynchburg, for such further proceedings therein as may be necessary and proper, in accordance with this opinion.