# CHARLESTON.

## GUERNSEY *v.* LAZEAR.

Submitted January 27, 1902. Decided March 29, 1902.

1. MARRIED WOMAN—*Separate Estate—Husband's Curtesy.*

   In the separate estate of a married woman there is no estate in the husband to have possession and profits during the wedlock, and no curtesy initiate. No estate by curtesy until the death of the wife. A judgment against the husband is no lien, during the wedlock, on such supposed curtesy, and a conveyance by wife and husband of such separate estate cannot be fraudulent as to such demand though such conveyance may have been made with intent to keep the property from being subjected to the husband's debt. (pp. 329, 330).

2. WILLS—*Application of Assets—Creditor's Lien.*

   A will sets apart in trust in the hands of an executor certain realty and directs its profits to be applied for the use of testatrix's husband during life with remainder over, and provides

that neither the real estate nor its profits shall be bound for the husband's past or future debts other than respectable and comfortable support. This clause of exemption is valid and the husband's interest, under the devise in the profits, is not liable for his debts.   (pp. 331, 332).

Appeal from Circuit Court, Brooke County.

Suit by George T. Guernsey and T. C. Truman against H. G. Lazear. Decree for defendant, and plaintiffs appeal.

*Affirmed.*

JOHN O. PALMER, for appellants.

J. F. CREE and I. C. WRIGHT, for appellee.

BRANNON, JUDGE:

George T. Guernsey and T. C. Truman brought a suit in equity in the circuit court of Brooke County against H. G. Lazear to enforce the supposed lien of a judgment in favor of Guernsey and Truman against Lazear upon certain real estate, and the bill having been dismissed upon demurrer, the plaintiffs have appealed to this Court. The bill seeks to make the judgment out of an alleged estate by the curtesy vested in Lazear in the real estate of his dead wife, vested in her as her separate property. This judgment against Lazear was recovered during the wedlock between Lazear and his wife. Some of her real estate was conveyed by her and her husband, after the date of the judgment, to J. S. Liggett, and some to William T. Gilchrist. Can this property be subjected in the hands of its purchasers to the judgment? It cannot, because the husband had no vested interest or estate in his wife's realty during her life, on which the plaintiff as creditor by judgment or otherwise, had a claim, so as to let them say that it had been conveyed away to the defeat of his debt. In *State* v. *McAllister*, 38 W. Va. p. 512, I expressed the opinion that the separate real estate of a married woman was not subject to curtesy initiate in the husband, as known at the common law; that he had no vested estate during the wife's life, and that his curtesy could not vest until her death. At the common law the husband, on marriage, could take possession of his wife's land and receive to his own use all its profits as long as the wedlock continued, and if issue was born of the marriage, the husband had at once a vested estate by

curtesy initiate, and if he outlived his wife, that curtesy became consummate, and he had a life estate. These estates were liable for his debts. A judgment bound them. This principle is stated in *Pickens* v. *Knisely,* 36 W. Va. 794, and *Arnold* v. *Bunnell,* 42 *Id.* 473, and *Merritt* v. *Hughes,* 36 *Id.* 356. But the married woman's separate estate act, Code, chapter 66, abolished both these estates vested in the husband. Therefore, during the wife's life, the husband has not even a shadow of estate in his wife's separate realty. He has only a possibility of a future estate. This is because that statute declares that her separate property and its rents, issues and increase shall be her sole and separate property in all respects as if she were a single woman, "and the same shall in no way be subject to the control of her husband nor liable to his debts." The statute makes her hold it, "to her sole and separate use," and she is given power to convey and devise it, and to take its rents and profits as a single woman, "and the same shall not be subject to the disposal of her husband, nor be liable for his debts." The statute plainly excludes all rights of the husband. Under these principles when Mrs. Lazear conveyed away the realty in question she conveyed nothing to the prejudice of her husband's creditors, and this for the simple reason that her husband had no vested estate in it. This is illustrated by a case holding that where a deed of trust was made by a wife upon her separate estate after the rendition of judgments against her husband, and she then died, it was held that whilst the judgments attached as liens upon his estate by curtesy after her death, yet the deed of trust, though later than the judgments, held preference over them, because at the date of the trust the husband had no vested estate, no curtesy initiate. *Campbell* v. *McBee,* 92 Va. 68, (22 S. E. 807). The fact that the plaintiffs in this case had judgment before the conveyances made by Mrs. Lazear and her husband does not alter the case. The husband having no estate the judgment did not attach as a lien on a curtesy. *Alexander* v. *Alexander,* 85 Va. 353; *Welch* v. *Solenberg, Id.* 441. An attachment confers no lien on such supposed curtesy for want of such estate to attach. *Breeding* v. *Davis,* 77 Va. 639. The husband cannot by any conveyance or deed of trust made by him, pass or charge any estate in his wife's land on the theory of his ownership of a curtesy therein. *McNeer* v. *McNeer,* 142

Ill. 388; *Porch* v. *Freis,* 18 N. J. Eq. 208; *Hershizer* v. *Florence,* 39 Ohio State 516; *Hurd* v. *Cass,* 9 Barb. 367. "A statute enacting that the property of a married woman shall not be liable for the debts of her husband exempts his estate in the curtesy in her real estate from being taken for his debts contracted after the passage of the act." *Hitz* v. *National Bank,* 111 U. S. 722. Thus, as the husband had no estate before said conveyances by his wife, the real estate conveyed by her cannot be subjected by the plaintiff.

Mrs. Lazear died still owning some of her separate estate, and the plaintiffs seek to enforce their judgment out of the estate by the curtesy of her husband therein. It seems that after the death of a wife a judgment would attach on the husband's curtesy in her separate estate. Many authorities so hold. Of course a common law curtesy in lands not separate estate vested in the wife before the Code of '68 would be liable. *Wyatt* v. *Smith,* 25 W. Va. 813. It is not necessary in this case to say whether a curtesy in separate estate would be liable to such judgment. Some cases hold that it is liable, while others say that as the statute says the separate estate shall not be liable for the husband's debts, the property of the wife, probably the home of the husband and her children, cannot be sold away from the children, or even from the debtor husband for his debts. *Hitz* v. *National Bank,* cited; Wills. Sep. Prop., ch. 3, 338, p. 107. In this case the judgment cannot be enforced against this property, for the reason that the husband executed a deed in the lifetime of his wife by which he acknowledged the deliverance to him of one hundred dollars by the wife of personal estate in lieu of his curtesy in the land of his wife and waived such right therein. This instrument is made legitimate and valid between husband and wife by section 16, chapter 65, Code, reading: "If any estate real or personal, delivered by the wife to the husband in lieu of his curtesy, and he accept the same, he shall be barred of his curtesy in the residue thereof." This would preclude Lazear himself, and consequently, his creditors, from any claim of curtesy. But the plaintiffs would avoid this result by alleging, as they do, that that instrument was made with the fraudulent intent to defeat their debt. How can this be so when the husband had no vested estate to which the creditor's rights attached? Before any estate vested in the husband, it

was intercepted, cut off, by that instrument, as it was allowed to be by law. What right had the husband in this estate of the wife, or his creditors, either? A debtor must have an estate liable to his creditor to enable that creditor to say that his debtor has defrauded him by transferring or releasing his property.

Another question arises in the case. Mrs. Lazear by her will provided that as her husband had become embarrassed by losses from unfortunate investments in real estate and liabilities as surety, and was getting old and incapable of work to support himself, and it would not be safe to vest any property in him absolutely, she vested in her executor for the benefit of her husband certain real estate and set apart the profits of the same for the use of her husband, and provided that neither the real estate nor its profits should be bound for his past or future debts and liabilities other than a respectable and comfortable support and decent burial. The will further provided that at the death of her husband said property should pass to the wife's sisters. These provisions of the will created what is called commonly a "spendthrift trust," that is, it gave the rents and profits of the realty to the husband during his life and the remainder in the property to her sisters, and it exempted the interest of the husband in the property, or rather its rents and profits, from liability for the husband's debts. The bill asks that this provision of the will exempting the husband's interest under this trust from liability for his debts be held void, and such interest be subjected to the plaintiff's debts. Is this exemption clause void? A vast amount of discussion has been had over this question and great contrariety of decision exists touching it. It is said to contravene a well established principle of law, that when an estate in land is conveyed or devised there is annexed to it the power of alienation in the alienee or devisee, and that this carries with it, as a natural incident, liability of the property to answer for the debts of the alienee or devisee, and that any limitation which takes away this power of alienation, or exempts the property from answering the debts of its owner is utterly void. It is said that it is unjust that a man should live upon property, enjoy it, and not pay his debts to his creditors, but let them starve. It is said that it is against public policy that property should thus be tied up from alienation or from liability for debts, and taken out of the channel of com-

merce and business, and thus fail to perform the functions in
organized society which property, for the public weal, ought to
perform. I here refer to that very valuable work recently is-
sued, American and English Decisions in Equity, Vol. II, 633.
It is unquestionably true that the English Chancery has held
such trusts void. It is also true that the preponderance of
American authorities was, at one time, decidedly in the same
way. At one time there were but two states holding such a
"spendthrift trust" valid, Pennsylvania and Massachusetts; but
many more states have since taken that side.

When Gray wrote the first edition of his work, Restraints on
Alienation, such was the state of the question; but in his sec-
ond edition, as will be seen in its preface and in ss. 177, 177a,
he states that many courts have since held such trusts valid.
The copious note in 2nd Decisions in Equity above cited,
states, that the current of authority in the United States is
setting very strongly in the direction of upholding such trusts
so far as they create equitable life estates. The supreme court
of the United States once held doctrine contrary to the validity
of such trusts. In *Nichols* v. *Levy,* 5 Wallace 433, the opinion
says: "If the determination of this case depended upon the
general principles of jurisprudence, the result must necessarily
be in favor of the appellees. It is a settled rule of law that the
beneficial interest of the *cestui que trust,* whatever it may be,
is liable for the payment of his debts. It cannot be so fenced
about by inhibitions and restrictions as to secure to it the incon-
sistent characteristics of right and enjoyment to the beneficiary
and immunity from his creditors. A condition precedent that
the provision shall not vest until his debts are paid, and a condi-
tion subsequent that it shall be divested and forfeited by his
insolvency, with a limitation over to another person, are valid,
and the law will give them full effect. Beyond this, protection
from the claims of creditors is not allowed to go." But con-
trast that expression of opinion with the opinion in *Nichols* v.
*Eaton,* 91 U. S. 716. After holding that the trust there in ques-
tion was valid according to the strictest principles of the Eng-
lish Chancery, the court took occasion to add the following
language or decided expression of opinion: "But, while we
have thus attempted to show that Mrs. Eaton's will is valid in all
its parts upon the extremest doctrine of the English Chancery
Court, we do not wish to have it understood that we accept the

limitations which that court has placed upon the power of testamentary disposition of property by its owner. We do not see, as implied in the remark of Lord Eldon, that the power of alienation is a necessary incident to a life-estate in real property, or that the rents and profits of real property and the interest and dividends of personal property may not be enjoyed by an individual without liability for his debts being attached as a necessary incident to such enjoyment. This doctrine is one which the English Chancery Court has ingrafted upon the common law for the benefit of creditors, and is comparatively of modern origin. We concede that there are limitations which public policy or general statutes impose upon all dispositions of property, such as those designed to prevent perpetuities and accumulations of real estate in corporations and ecclesiastical bodies. We also admit that there is a just and sound policy peculiarly appropriate to the jurisdiction of courts of equity to protect creditors against frauds upon their rights, whether they be actual or constructive frauds. But the doctrine, that the owner of property, in the free exercise of his will in disposing of it, cannot so dispose of it, but that the object of his bounty, who parts with nothing in return, must hold it subject to the debts due his creditors, though that may soon deprive him of all the benefits sought to be conferred by the testator's affection or generosity, is one which we are not prepared to announce as the doctrine of this Court.

"If the doctrine is to be sustained at all, it must rest exclusively on the rights of creditors. Whatever may be the extent of those rights in England, the policy of the States of this Union, as expressed both by their statutes and the decisions of their courts, has not been carried so far in that direction.

"It is believed that every State in the Union has passed statutes by which a part of the property of the debtor is exempt from seizure on execution or other process of the courts; in short, is not by law liable to the payment of his debts. This exemption varies in its extent and nature in the different states. In some it extends only to the merest implements of household necessity; in others it includes the library of the professional man, however extensive, and the tools of the mechanic; and in many it embraces the homestead in which the family resides. This has come to be considered in this country as a wise, as it certainly may be called a settled policy, in all the states. To property so

exempted the creditor has no right to look, and does not look, as a means of payment when his debt is created; and while this Court has steadily held, under the constitutional provision against impairing the obligations of contracts by State laws, that such exemption laws, when first enacted, were invalid as to debts then in existence, it has always held, that, as to contracts made thereafter, the exemptions were valid.

"This distinction is well founded on the sound and unanswerable reason, that the creditor is neither defrauded nor injured by the application of the law to his case, as he knows, when he parts with the consideration of his debt, that the property so exempt can never be made liable to its payment. Nothing is withdrawn from this liability which was ever subject to it, or to which he had a right to look for its discharge in payment. The analogy of this principle to the devise of the income from real and personal property for life seems perfect. In this country, all wills or other instruments creating such trust-estates are recorded in public offices, where they may be inspected by every one; and the law in such cases imputes notice to all persons concerned of all the facts which they might know by the inspection. When, therefore, it appears by the records of a will that the devisee holds this life-estate or income, dividends, or rents of real or personal property, payable to him alone, to the exclusion of the alienee or creditor, the latter knows, that, in creating a debt with such person, he has no right to look at that income as a means of discharging it. He is neither misled nor defrauded when the object of the testator is carried out by excluding him from any benefit of such a devise.

"Nor do we see any reason in the recognized nature of and tenure of property and its transfer by will, why a testator who *gives,* who gives without any pecuniary return, who gets nothing of property value from the donee, may not attach to that gift the incident of continued use, of uninterrupted benefit of the gift during the life of the donee. Why a parent or one who loves another, and wishes to use his own property in securing the object of his affections, so far as property can do it, from the ills of life, the vicissitudes of fortune, and even his own improvidence, or incapacity for self-protection, should not be permitted to do so, is not readily perceived."

In the case of *Hyde* v. *Wood,* 94 U: S. 523, there is somewhat an approval of the case of *Nichols* v. *Eaton.* In the case of

*Spindle* v. *Shreve*, 111 U. S. 542, 547, we find the supreme court using this language:

"It cannot be doubted that it is competent for testators and grantors, by will or deed, to construct and establish trusts, both of real and personal property, and of the rents, issues, profits and produce of the same, by appropriate limitations and powers to trustees, which shall secure the application of such bounty to the personal and family uses during the life of the beneficiary, so that it shall not be subject to alienation, either by voluntary act on his part, or *in invitum,* by his creditors. The limits within which such provisions may be made and administered, of course, must be found in the law of that jurisdiction which is the *situs* of the property, in case of real estate, and in cases of personalty, where the trust was created or is to be administered according to circumstances."

The burden of the argument of those courts which deny the validity of such trusts rests upon the ancient common law doctrine stated by Coke in Co. Litt. 223a, thus: "The like law is of a devise in fee upon condition that the devisee shall not alien, the condition is void; and so it is of a grant, release, confirmation or any other conveyance whereby a fee simple doth pass. For it is absurd and repugnant to reason that he that hath no possibility to have the land revert to him should restrain his feoffee in fee simple of all his power to alien. And so it is if a man be possessed of a lease for years, or of a horse, or of any other chattel, real or personal, and give or sell his whole interest or propertie therein, upon condition that the donee or vendee shall not alien the same, the same is void, because his whole interest and propertie is out of him, so as he hath no possibilitie of a reverter; and it is against trade and traffique and bargaining and contracting between man and man." Of course it is a fundamental principle that the power to sell is an inseparable incident of the ownership of the property and thus makes it liable to the owner's debts. *McClure* v. *Cook,* 39 W. Va. 579. This doctrine applies to life estates. Mr. Gray would add against the validity of such trusts the argument that, "one of the worst results of spendthrift trusts is the encouragement it gives to a plutocracy and to the accumulation of a great fortune in a single hand through the power it affords to rich men to assure an undisturbed possession of wealth to their children, however weak or wicked they may be."

I shall not weary with a discussion of the numerous decisions in the various states upon this subject. Conflict runs through them. The above reference to Decisions in Equity and Gray on Restraint on Alienation and the elaborate note to *Garland* v. *Garland,* 24 Am. St. Reports 686, and section 189a of Freeman on Executions will dispense with this labor.

Let us now turn to Virginia cases more or less pertinent. In *Nichell* v. *Handley,* 10 Grat. 336, is found the following dictum: "There is nothing in the nature or law of property which would prevent the testatrix, when about to die, from appropriating her property to the support of her poor and helpless relations according to the different conditions, and wants of such relatives; nothing to prevent her from charging her property with the expense of food, raiment and shelter for such relatives. There is nothing in law or reason which should prevent her from appointing an agent or trustee to administer her bounty." This is but a dictum, it is true, like the above quotations from opinions of the supreme court of the United States. They do not technically decide the question before us, but their light and strength cannot be disregarded, as they are evidently the result of grave and careful consideration. Take the case of *Markham* v. *Guerrant,* 4 Leigh 279, where the deed conveyed property in trust for the maintenance of J. M. and his wife and children during their lives, with full power in the trustee to manage the estate, and it was held that J. M.'s debts did not bind the estate. So with the case of *Johnson* v. *Zane,* 11 Grat 552, where Zane made a trust deed conveying estate to trustees for the benefit of himself and his wife, providing that the property should not be subjected to his debts thereafter contracted. It was held that Zane had no such property vested in him as could be made liable for his debts. At first blush this would seem to violate a well established principle that a man cannot create a trust for himself by conveying his own property to trustees for the benefit of himself. *Brown* v. *McGill,* 67 Am. St. Reports 334; Gray, Restr. on Alien, s. 268a. I notice in the *Markham Case,* cited, that there was no prohibition against alienation or indebtedness, and yet the estate was held not liable. In the *Zane Case* there was an explicit prohibition against debts. In *Roane* v. *Archer,* 4 Leigh 550, estate was conveyed to the benefit of a man and his wife during their joint lives, with remainder over, and it was held that though there was no prohi-

bition against debts, the property was not liable during the joint lives of man and wife, but his contingent interest, if he should survive his wife, would be liable. Now, I remark, that in the *Zane Case,* the able and thoughtful Judge Lee seems to have had no doubt about the validity of the clause prohibiting payment of debts. It was held that Zane had no property such as would be liable to debts. But as to these Virginia cases, I will note that they do not settle the point before us, though they cannot be entirely eliminated as not bearing somewhat upon the question. They lean somewhat towards the contention that such a trust as we have before us now is valid. I do not think that *Armstrong* v. *Pilts,* 13 Grat. 235, though cited as supporting such trust, has much force to do so. I should have cited *Perkins* v. *Dickinson,* 3 Grat. 335, where it was held that a deed by a woman giving her property to trustees upon trust that her husband should, during the joint lives of himself and her, enjoy the profits, but that they should not be liable for his debts, conferred no estate on him liable to his debts.

As to these Virginia cases I will say, that they were trusts for the joint benefit of husband and wife and did not create separable interests so that the interest of the husband could be subjected. They do not decide our point. The case of *Camp* v. *Cleary,* 76 Va. 140, does not decide our point, but the deed involved in it conveyed to R. for life on condition that if he should ever sell the deed should be void. Such a provision would be valid even under the doctrines of the English Chancery, because the estate was defeasible on the condition. I come now to the first case in Virginia bearing directly upon this trust in our hands, *Garland* v. *Garland,* 87 Va. 758; 24 Am. St. Reports 682, where the will set apart property in the hands of an executor to be held in trust for the testator's brother and declaring that the profits are set apart under the superintendence of the executor for the use of the brother, but that neither the estate nor the profits "shall be bound for his past debts or future debts or liabilities other than decent and comfortable support," with remainder over. The will we are now passing on seems to have been formulated, as regards this matter, upon this case of *Garland* v. *Garland;* for the present will sets "apart in trust in the hands of my executor for the benefit of my husband, H. G. Lazear (describing certain property); the profits of the said estate are set apart for the use of him, the said H. G. Lazear,

under his superintendence. But neither the said real estate nor the profits thereof shall be bound for his past debts, or for future debts and liabilities other than respectable and comfortable support and decent burial." In the case of *Garland* v. *Garland,* the provision was held valid, and that the devisee had no absolute property in the profits which he could assign or could be subjected to his debts. But that case did not stand long, for I see that the case of *Hutchinson* v. *Maxwell,* decided January 30, 1902, 40 S. E. 655 overrules it. In the last case the trust deed provided that the property rights of the beneficiary could not be liable for his debts and it was held that the condition was repugnant to the estate conveyed, and that the interest of the beneficiary being an equitable trust estate vested in him, was liable for his debts because of the statute provision, which is the same as that found in our Code, chapter 71, section 16, reading thus: "Estates of every kind, holden or possessed in trust, shall be subject to debts and charges of the persons to whose use or whose benefit they are holden or possessed, as they would be if those persons owned a like trust in the things holden or possessed, as in the uses or trusts thereof." The court in that case held that such a limitation is forbidden by the principles of the common law above stated, that is, that any provision prohibiting the power in the grantee or devisee to alien or charge with debts is repugnant and void. The court adds as another reason, the statute just quoted. I must say that I have nowhere seen the subject discussed from the point of view of the invalidity of such trusts more definitely or ably than in the opinion of Judge Buchanan. As to the objection that the provision is repugnant to the common law, I need say nothing in addition to what has been said above. As to the argument against the validity of such trusts based on the statute which I have just quoted, it does seem to me that there is not much force in that argument. At one time it was decided that trust estates were not liable to debts. That statute was passed to make their liability clear. A trust estate, though a trust estate, would be liable for the beneficiary's debts under that statute, if there is no prohibition against indebtedness contained in the instrument creating the trust, but where the instrument creating the trust provides immunity from debts I do not think this statute applies. In such case it does not enlighten

us upon this controverted question. The sole purpose of the statute was to make trust estates liable like legal estates.

I understand the law upon this subject to be, that where a fee or life-estate is conveyed or devised straight to the party, or to trustees for him, upon a precedent condition or a subsequent condition defeating that estate in case of alienation, or bankruptcy, or subjection to debts, the provision is valid under the most rigid principles of the English Chancery. So where a fee is vested in a party, or in trustees for him, with such a provision against alienation or indebtedness, the condition would be void. So if a life estate is conveyed to the party himself, vesting him with the legal estate, such a limitation or provision against alienation or debts would be void. But where there is conveyance or devise to trustees to hold for the benefit of another for his life, the authorities divide, as I have above several times stated.

Amid so much conflict of authority of strength and emminence, it is very perplexing to render a decision in this the first case upon this question arising in this State, so far as I am informed. But we must decide the question. The following considerations induce us to hold, that such a trust for life as that involved in this case should be held valid. Why should not a father having a dissolute, improvident or unfortunate son, be able to so bestow his own property as to protect that son from penury and want? Why should not a loving wife be allowed to so deposit her separate estate in the hands of a trustee so as to keep her aged, unfortunate, dissolute or improvident husband from trudging his weary way over the hill to the poor house? Why should not any one be allowed to use his own property so as to keep the gaunt wolf of grinding poverty from the home door of those near and dear to his heart? It is only for a few years of a short life that he may do this; for he cannot extend it beyond the life estate. Whose property is this? Not that of the creditors of the son or of the husband. They have no right to that property. If they have lent credit in the life of the father or of the wife, they did it at their peril; for neither son nor husband had any interest in that property. If they extended credit after the creation of the trust, they did it with their eyes open to the trust and the character of the estate created by it. What have these creditors lost of which they can justly complain? Under the English doctrine, when there is a

condition defeating estate there is the same danger to creditors as in this case. The contrary doctrine infringes upon the right of the owner of property to dispose of it as he prefers, and to devote it to highly commendable and meritorious uses. He ought to have the right to direct it to the reasonable provision of support and maintenance for those whom he leaves after he has gone. Such cases as *Johnson* v. *Zane* bind us to say that if a trust be declared for the joint use of a man and his wife, it is good. Then why not one for the support of a single son or a surviving husband?

We therefore hold that the interest vested in H. Z. Lazear by his wife's will cannot be subjected to his debts, and we therefore affirm the decree of the circuit court.

An additional reason denying a curtesy in Lazear is this, that though, as appears from *Cunningham* v. *Cunningham,* 30 W. Va. 599, a husband is entitled to curtesy notwithstanding the will of his wife makes a provision for him, and he does not renounce it, I do not see how, as the present will gives Lazear a profit estate for life in all his wife's property, it can be said that he can be regarded as having a curtesy, in the absence of a renunciation of the will. Both estates cannot coexist, that is, a curtesy and the devise. Lazear would be put to election between the two claims, and his creditors could not compel him to elect a curtesy. Paige on Wills, s. 711; Redf., part 2, p. 750.

*Affirmed.*